GOWAN'S ADMINISTRATOR, Appellant, v. GOWAN, Respondent.

1. Where a debtor deposits personal property in the hands of another as bailee with a view fraudulently to protect it from his creditors, such bailee can not avail himself of such fraudulent intent to defeat an action brought against him by the debtor for the recovery of such property.

*Appeal from Moniteau Circuit Court.*

This was an action for the possession of a female slave named Sylvia and her three children. The suit was commenced November 18, 1857. The defendant, Rebecca Gowan, in her answer denies the right of the plaintiff to the possession, and sets np the statute of limitations. The testimony adduced in support of the issues is set forth in the opinion of the court. The court, at the instance of the defendant, gave the following instructions among others: " 1. If the jury believe from the evidence that A. P. Gowan was in debt in Tennessee, and brought the negro Sylvia to this state, and delivered her to A. G. Gowan, or he afterwards obtained possession of her and kept her by the consent of A. P. Gowan, to avoid payment of his debts, or to hinder or delay his creditors, they must find for defendant. The law in such case leaves the possession where it finds it, and will not assist the party intending the fraud, or his representatives, in regaining the possession. 4. If the jury are satis-

fied from the evidence that A. P. Gowan gave the negro Sylvia to A. G. Gowan, and that he took possession of said negro at the time of the gift, or afterwards, by virtue of said gift and by A. P. Gowan's consent, they must find for defendant; and in such case no bill of sale was necessary to pass the title, nor is it material that A. P. Gowan obtained the negro in right of his wife."

It is deemed unnecessary to set forth the voluminous instructions—fifteen in all—given in addition to the above.

*Parsons & Ewing*, for appellant.

I. There was no pretence that the appellant's intestate ever parted with his title to Sylvia, unless it was by the alleged gift. Admitting even the alleged fraudulent intent, still A. G. Gowan was only a bailee, or depository, not a creditor, or grantee. Neither he, nor persons claiming under him, could set up the fraud to defeat the recovery by the absolute owner. (2 South. 742; 2 Hayw. 408.) It is admitted that where the absolute title to the property is passed with a fraudulent intent as to creditors, the grantor is without remedy, but that is not the case presented by the record. (Smoot v. Wathen, 8 Mo. 524.) The court erred in giving instructions to the jury. A. P. Gowan had no notice of any adverse claim. Statute would not run until then. (Keeton's heirs v. Keeton's Adm'r, 20 Mo. 530; 8 Mo. 522.) A. G. Gowan was trustee of an express trust. This possession never became hostile. (3 Johns. Cas. 124; 12 Johns. 367.) Defendant can not tack her possession to that of her husband for the purpose of bringing herself under the statute. (10 Cush. 241.) The evidence is against the defence of a gift, and is not sufficient to warrant the giving of the fourth instruction.

*Gardenhire*, for respondent.

I. Every conveyance of goods and chattels, in trust to the use of the person so making such conveyance is void against creditors. (2 R. C. p. 802, § 1.) Every conveyance or as-

signment in writing or otherwise of any interest in goods and chattels made with the intent to hinder, delay or defraud creditors, as to such creditors is utterly void. Every transfer of property, it matters not in what form, contrived to defraud creditors is void, and when void the party in possession may hold it against his fraudulent grantor, donor or bailor. It is the contrivance to hinder or delay creditors that makes the transfer fraudulent, and its being fraudulent enables the party in possession to hold it. Every pretended transfer of an absolute title cancels an actual bailment; running the property off into an adjoining state and hiding it, may do the same thing. The jury, in this case, have found that it did do it. There is a transfer of possession in both cases, a concealment of an actual bailment in both, and with the intent to defraud creditors. As the party in possession in one case can unquestionably hold it, why not in the other? The instructions fairly presented the case to the jury, and the judgment of the court below ought not to be disturbed. The tendency of the evidence fully supported the instructions given, and the jury having found the facts for respondent, their verdict ought not to be disturbed.

NAPTON, Judge, delivered the opinion of the court.

The first instruction given for the defendant in this case is not, in our view, correct. It asserts the principle that if a debtor puts personal property into the possession of another with a view to protect it from his creditor, the party in possession may avail himself of the fraudulent intent to defeat the action of the debtor for the recovery of his property. This is going farther than any adjudged case which has fallen under our observation, and we doubt the morality or expediency of the doctrine.

The statute against fraudulent conveyances declares every deed of gift and conveyance of goods and chattels, in trust for the use of the person so making such deed of gift or conveyance, to be void as against creditors; and every conveyance or assignment in writing or otherwise of any estate or

interest in lands or in goods and chattels, made to hinder and delay creditors, is declared void as against creditors and purchasers.

The statute has no application to a mere bailment, a simple delivery of possession, for the plain reason that such an enactment would be useless. The statute is intended to remove obstructions out of the way of creditors, and all transfers of title or interest from the debtor to a third person are abstractions, apparent or real, according to their good faith or want of good faith. If they are not made in good faith, but merely for obstructions to creditors, the statute sweeps them away and pronounces them of no effect, so far as creditors are concerned; but so far as the parties themselves are concerned, their relations to each other are not changed. The title is allowed, so far as the parties to it are concerned, to remain just where they have placed it, and the courts will not interfere to change the apparent condition of the title.

But in the class of cases to which the instruction we have referred to applies, the apparent and real condition of the title is the same. No title has been put in another which is at all in the way of the creditor. If the creditor can find the property in the hands of the bailee, he can just as readily subject it to his execution as though it remained with the debtor. The bailee sets up no claim; he admits the ownership of the bailor.

The conveyances and assignments referred to in the statute are good between the parties, and if they were also valid against creditors, the latter would be without redress, so far as the property conveyed was concerned. But in the case of a mere bailment, where nothing but possession is parted with by the owner, it does not concern the creditor whether the bailment was made from good or bad motives. The property is just as accessible to him in the one case as in the other. The bailee pretends to no title, and there is no necessity for changing the ostensible condition of things in order to make way for his claim.

The principle upon which courts of equity refuse to interfere in cases of fraudulent conveyances is, that the party complaining admits his own fraud and asks the court to assist him in getting back the title, where, but for that fraud, it always would have been. Courts of equity decline to aid him, and consider it best to let things stand as they find them. The party invoking their aid has forfeited all claims to it by his own conduct; and courts of law, when they took cognizance of frauds, adopted the rule. But the plaintiff here asks no aid of a court of law or equity to set aside any thing that has been done, either in the shape of a conveyance or otherwise. He simply asks that the bailment may be enforced; that as he put the property in the defendant's hands, subject to his order, he shall now have it again when demanded. No document or fact is alleged to show that the transaction was any otherwise than it appeared to be.

It may be questioned whether the determination of courts to give no assistance in the case of fraudulent conveyances, as between the parties, has been promotive of the ends of justice and is founded upon sound morality. It is seldom that both parties are equally to blame in a transaction tinctured with fraud in each, and if they are, the doctrine seems to encourage a double fraud on the one side to punish the single fraud on the other. But we will not be understood as questioning the propriety of the general rule; we merely make the observation to show that it has been carried far enough. It ought not to be extended to cases not properly within its sphere. We might as well be asked to go further still and allow a defendant to defend himself against a just claim by the general allegation that 'the plaintiff was a dishonest person or had committed some crime.

The merits of this case, however, did not turn altogether upon the question we have first considered; the main points of defence, in addition, were a gift to the defendant's husband and the statute of limitations. Upon these points there were numerous instructions.

There was evidence which rendered it altogether proper to

put to the jury the question of a gift. The circumstances of the case were somewhat peculiar. Nearly twenty years before this action was brought, the plaintiffs' intestate, A. P. Gowan, then a resident of Tennessee, brought to this state the negro woman, whose children, together with herself, are now in controversy, with the avowed intention of opening or improving a farm and ultimately settling upon it with his family. Some of his neighbors, it seems from the depositions filed in this cause, believed that his object was to place this negro out of the reach of his creditors in Tennessee. However this may have been, it appears that A. P. Gowan was accompanied by the defendant's husband, then a youth about sixteen years of age, a natural son of A. P. Gowan's father, who had been raised in the family. The Gowans rented a farm in Audrain county, and upon A. P. Gowan's return to Tennessee in the fall of the year of their removal (which was in 1841 or 1842) the negro girl was left in charge of the person whose farm had been rented, and young Gowan also remained. The latter shortly after removed to a neighbor's and took with him the servant girl, and in the course of the year 1842 or '43, he wrote to his brother in Tennessee that he expected to remove from this state and that he desired to know his wishes relative to the girl. The reply of A. P. Gowan was "to keep the girl until he called for her; and if he never called for her, she was his. A. G. Gowan." Witnesses testified that before A. P. Gowan left for Tennessee, he said he intended leaving the woman and two mares to Albert "for a start in this new country," as he was poor and had never received any thing from their father's estate.

This evidence, in connection with the length of time during which the defendant, and those under whom she claims, has been in possession of the slave, without the assertion of any claim on the part of A. P. Gowan, so far as the record shows, up to his death, which occurred four or five years before the institution of the suit, is certainly evidence proper for the consideration of a jury. There were facts also, on the other side, such as the insolvency of A. P. Gowan, and

31—VOL. XXX.

the source from which he derived his title to the slave, (by his marriage,) which ought to be considered. There was no evidence offered as to whether Gowan, the plaintiff's intestate, received other slaves by his wife, or what property he received from his father's estate. Nor was any proof offered to show that A. P. Gowan received the hire of the negro collected in this state. This latter circumstance would throw much light upon the subject, not only in reference to the question of a gift, but especially on the question of the statute of limitations.

In reference to the statute of limitations, it is obvious that the only real dispute which can arise on this point is, whether Alfred Gowan's possession here was adverse. That he had actual possession of the slave for nearly sixteen years is made manifest by the evidence, and that during this long period, more than three times the period required to bar the claim, he received all the hire of the woman and treated her in every respect as his property, is beyond question. If the hire thus received was appropriated to his own use, it would certainly go very far to make out an adverse possession, as the knowledge of A. P. Gowan of his actual possession of the slave is conceded. If, on the other hand, this hire was remitted to A. P. Gowan in Tennessee, that fact would show that the possession was not adverse. We find no evidence on this point in the record.

The judgment is reversed and the case remanded. The other judges concur.