JOHN H. COLEMAN, Respondent, v. NATHAN LIPSCOMB, Appellant.

18a 443
31a 613

Kansas City Court of Appeals, June 15, 1885.

1, BAILMENT—WHAT CONSTITUTES.—The law is well settled that in

order to constitute a bailment the parties must have intended that there should be a return or delivery of the identical thing bailed. Story on Bailments 47, 93, 150, and 283.

2. ———— MONEY HELD IN TRUST FOR ANOTHER.—If one collect money for another and holds it in trust for him without reward, and without the direction or request of that other deposits it, with other money of his own in bank to his individual credit; if the money is lost through the subsequent insolvency of the bank, the loss would fall on him who, unbidden, saw fit to make the deposit in his own name. Perry on Trusts, sect. 443; *Mason v. Whitthorne*, 2 Caldwell (Tenn.) 242; *State v. Powell*, 67 Mo. 395; *State v. Rubey*, 77 Mo. 610.

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, J.

*Affirmed.*

The case is sufficiently stated in the opinion of the court.

LIPSCOMB & RUST, for the appellant.

I. What was the contract between plaintiff and defendant, the latter being the gratuitous bailee of the former? His legal obligation is to pay or deliver the thing bailed on *demand*, or *render a valid excuse for non-payment* or non-delivery. No demand was made here until after failure of the bank.

II. There was no conversion in this case by the deposit of this, with other money, in the bank; and, therefore, the relation of debtor and creditor did not exist. *Niemetz v. St. L. Ag. Ass'n.*, 5 Mo. App. 59; *Sparks v. Purdy*, 11 Mo. 219; *Williams v. Wall*, 60 Mo. 321; *McCormick v. Gilliland*, 76 Mo. 655; *Magum v. Bell*, 20 La. Ann. 215.

III. Is the defendant liable for the loss of the money? No demand was made until after failure of bank. A gratuitous bailee is not liable for nonfeasance. He is not liable until there is a special demand, unless he has done some wrongful act towards the property. Chitty on Cont. (11 Ed.) vol. 1, p. 665, note 4, and cases cited; *McLean v. Rutherford*, 8 Mo. 109;

*Wiser v. Chesley*, 53 Mo. 547 ; Story on Bailments (5 Ed.) sect. 34.

IV. If the deposit was wrongful the plaintiff acquiesced in and ratified it. Story on Agency (5 Ed.) sect. 255, *et seq.; Curry v. Hall*, 15 West. Va. 867.

HALL & ROGERS, for the respondent.

I. The first question is, whether it was the intention of the parties that Lipscomb should get the money for the steers and then pay Coleman his fifty-six dollars out of that identical money, to-wit, the twenty-three hundred dollars which the steers brought, *or*, was it their intention simply that Lipscomb should pay Coleman the fifty-six dollars out of his general funds. For in order to constitute a bailment the parties must intend that there shall be a return or delivery of the identical property or thing bailed. Schouler Bailments, pp. 5, 6 and 29 ; 2 Kent's Com. 558 ; Story Bailments, sect. 47. The facts, as found by the court, show that neither party, before the failure of the bank, expected that L. should pay the fifty-six dollars out of the identical money received for the steers. L. destroyed the identity of the money by depositing it to his own credit.

II. Lipscomb made himself personally liable in debt by depositing the money in bank to his own credit, and in his general account, for then the relation of debtor and creditor arose between him and the bank. Perry on Trusts, sect. 443 and cases cited; *Kneck v. Savings Inst.*, 2 Mo. App. 563 ; *State v. Powell*, 67 Mo. 395 ; *State v. Moore*, 74 Mo. 413 ; *State v. Rubey*, 77 Mo. 610 ; Schouler Bailments 66 ; *Dickinson v. Coates*, 79 Mo. 250. The deposit was a loan to the bank. 2 Kent's Com. (12 Ed.) N. Y. 351.

III. Coleman knew L. had deposited to his own credit and L. offered to give check for it, but never did, but C. made no objection. The parties thus virtually agreed that Lipscomb should be the debtor of C.

Opinion by PHILIPS, P. J.

This action was instituted in a justice's court, and

tried on appeal in the circuit court, without the intervention of a jury. The court made the following finding as to the facts:

"On April 3, 1878, the defendant lived some ten or fifteen miles out of Kansas City, Jackson county, Mo., and started to Kansas City with a lot of cattle for sale. At New Santa Fe, near defendant's residence, the plaintiff, with the consent of the defendant, put a steer into the lot. The cattle were all driven to the stock yards at Kansas City, and there sold as the property of the defendant. The whole lot came to some $2,300. Plaintiff and defendant caught the weight of plaintiff's steer when being weighed, and it came to fifty-six dollars.

"Plaintiff went home and left the defendant to get the money. The defendant got a check for the aggregate aforesaid on the Mastin bank from the purchaser. The defendant then went to the Mastin bank, but it being closed for the day, it being after banking hours, left the check with his brother to be deposited to the account of defendant the next day, which was done. Both plaintiff and defendant had an account with the bank. Plaintiff inquired at the bank, and found the money had not been placed to his account. Defendant met the plaintiff soon thereafter, and told the plaintiff how he had deposited the money, and said he would give the plaintiff a check for the fifty-six dollars. The inquiry at the bank by plaintiff, and the information given plaintiff by the defendant as to how it had been deposited, all occurred within ten days after the sale of the cattle. No check was actually made out to the plaintiff, nor did he demand one. Plaintiff did not demand the money until after the failure of the bank, and no objection was made by the plaintiff to what defendant had done with respect to it. The bank failed in August of that year. At this time the defendant had to his credit still in the bank some $300, the balance having been used by him. There was no design on the part of the defendant to keep the plaintiff out of his money, and he would have given the plaintiff a check at any time when asked so to do. On the foregoing

finding of the facts the court declares the law to be that the relation of debtor and creditor existed, and the judgment must be for plaintiff."

From this judgment the defendant has appealed to this court. As the bill of exceptions does not contain any of the evidence introduced at the trial, the special finding of the court must, for the purpose of this appeal, be regarded as a special verdict. So the only question to be determined is as to the conclusion of law drawn therefrom.

The contention of the appellant (defendant below) is, that the transaction between the parties constituted a mere bailment, and the defendant must be regarded as a bailee without hire. It is, perhaps, unnecessary to discuss the distinction between a deposit and a mandate, and to determine to which of the two species of bailments this should be referred under defendant's theory; for, as stated by Story, in note 4, page 143, of his work on Bailments, ninth edition: " In almost every instance where a gratuitous bailment for the bailor's benefit has been presented, the court avoids making an issue between deposit and mandate, basing its legal conclusion upon principles common to both classes."

It cannot be said there was any bailment of the steer with the defendant, because the law is well settled that in order to constitute such bailment the parties must have intended that there should be a return or delivery of the identical thing bailed. 2 Kent. Com. 558; *Trunick v. Smith*, 63 Pa. St. 18–23; Story on Bailments 47, 93, 150, 283.

The very purpose of the parties in placing the steer in defendant's herd was to have him sold just as was done. When he was sold, and the amount of the purchase money ascertained, the plain interpretation of the understanding between the parties must be, that the plaintiff entrusted to defendant the collection of the purchase money, and an implied promise on the part of the defendant that, without reward, he would collect and account to plaintiff therefor. It could not, therefore, be strictly said there was any bailment of this

money—the thing itself—for the plaintiff never had possession or control of the money; so it could not be "a delivery of goods on condition." When the defendant did collect the money he held it in trust for the plaintiff. His duty towards it was that of a trustee without reward. We need not controvert the proposition that if the money, in defendant's hands had been lost by him, without inculpatory negligence, he would not be answerable over to the *cestui que trust*. Nor is it necessary to say that the defendant took the check in his name wrongfully for the entire amount of the sale. But the fact remains, with all it implies in law, that the defendant, without the direction or request, expressed or implied, on the part of the plaintiff, saw fit to deposit the whole sum in the bank to his individual credit. What then, after this deposit, was the legal status of the parties as repects the fund in controversy? The law is well settled, at least in this state, that the deposit by the defendant of this money in bank in his own name and to his credit alone, established the relation of creditor and debtor between the defendant and the bank. The money when so deposited became the property of the bank, to loan, use or employ as its own. As such it was not a trust fund, and the defendant himself could not have pursued it in kind or as a trust fund. *Bank of Republic v. Millard*, 10 Wall. 152, and other authorities, reviewed and approved by our supreme court in *Dickson v. Coats*, 79 Mo. 250.

No one, save the depositor, could check on the bank therefor. The plaintiff could not have maintained any action against the bank for his portion thereof. *Dickson v. Coats*, *supra*.

It must logically follow, therefore, that if the money was lost through the subsequent insolvency of the bank the loss would fall on him who, unbidden, saw fit to make the deposit in his own name.

"A trustee may deposit money temporarily in some responsible bank or banking house; but he will be liable for the money in case of a failure of the bank, or for its depreciation, if he deposits it to his own credit, and not

to the separate account of the trust estate." 1 Perry on Trusts, sect. 443; *Wren v. Kirtan,* 11 Ves. 377.

In *Mason v. Whitthorne* (2 Cold. 242), it is distinctly held, that where the trustee deposited the trust fund in bank, mingling it with his own, in his name, he thereby treated the money as his own: "From that moment it ceases to be at the risk of the *cestui que trust,* and is at the risk of the trustee." And, therefore, the depositor was responsible for any loss in the subsequent depreciation of the money.

This is in accord with the rule in this state. *State v. Powell,* 67 Mo. 395; *State v. Moore,* 74 Mo. 413; *State v. Rubey,* 77 Mo. 610; *Knecht v. U. S. Sav. Inst.,* 2 Mo. App. 563.

It is true the defendant, after he had deposited the money in bank informed plaintiff of the fact, and told him he would give him a check therefor at any time. But he did not offer him the check, nor do any other act to change the existing relation between them. The defendant then owed the plaintiff the money. He had placed it where the defendant could not recover it except on his check. So far from this subsequent conversation warranting the conclusion that plaintiff by his silence exonerated the defendant from his personal liability to him for the debt, it rather justifies the inference that the plaintiff regarded his neighbor as solvent and honest, as he was, and not needing the money, did not insist on its payment then. If the plaintiff had intended to trust the bank rather than plaintiff, he would have taken the check from defendant and transferred the account to his name.

Our conclusion is, that it cannot be maintained that after the defendant had deposited the money in bank in his own name, and thereby established the relation of creditor and debtor, as for money loaned by defendant to the bank, that he held the money as bailee of the plaintiff. The conclusion reached by the circuit court was unavoidable, and the judgment must be affirmed. All concur.