CLARA PYBUS KNAPP, Administratrix of the Estate of RALPH H. PYBUS KNAPP, Deceased, Respondent, v. GEORGIA KNAPP, Appellant.

St. Louis Court of Appeals, April 10, 1906.

(Opinion by Bland, P. J.)

1. FRAUDULENT CONVEYANCES: Fraudulent Grantee. The administrator of an intestate can not recover from the fraudulent transferee, money disposed of by the intestate for the purpose of defrauding his creditors.

2. BAILMENT: Money. The rule that there can be no bailment unless the identical thing bailed is to be returned to the bailor does not apply to money which came into the possession of the bailee, knowing that it belonged to the bailor, without any agreement, and which was deposited by the bailee to her own credit in a bank; the same sum of money she received was in law the same money.

(Nortoni, J., on Motion for Rehearing.)

3. ———: ———. The opinion in this case is not in conflict with the case of Coleman v. Lipscomb, 18 Mo. App. 443, nor with the case of Corn v. City of Cameron, 19 Mo. App. 583, both of the Kansas City Court of Appeals, and it will therefore not be transferred to the Supreme Court on account of conflict.

4. ———: ———: Intention. Where the money of one comes into possession of another with the intention that it should be a bailment, the law will treat it as such, though the bailee deposited the money to his own account in the bank; the evidence in this case is examined and held sufficient to support a finding that the parties intended a bailment, so that the administrator of the bailor could recover the same sum of money from the bailee, though it was not the identical money.

5. ———: Fraudulent Conveyances. The administrator of a bailor can recover from the bailee property placed in bailment with

the fraudulent intent to defeat the rights of the bailor's creditors because there was no transfer of title and the title to the property still remained in the bailor.

6. ———: ———: **Executed Fraud.** And this may be done although the fraudulent purpose of the bailment was fully accomplished. The rule that a fraudulent grantor cannot recover property conveyed· in fraud of creditors does not apply; the bailee is precluded by the nature of the transaction from setting up the illegality of the bailment.

7. ———: ———: **Locus Poenitentiae.** The rule that a fraudulent grantor may repent and recover the thing fraudulently conveyed, *only* while it is executory, does not apply to a case of bailment.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED (*with directions*).

*John S. Leahy* and *Bond, Marshall & Bond* for appellant.

(1)   The general rule of law applicable to the last proposition is clearly stated in 14 Am. and Eng. Ency. of Law (2 Ed.), page 273, et seq.   And this has been the rule in Missouri (as announced not only by the Supreme Court, but by both Court of Appeals), almost since Missouri became a State.   Brown, Adm., v. Finley, 18 Mo. 378.   In this case it was pointed out that this rule obtained everywhere, except in States having peculiar statutes on the subject, and it was expressly held that an administrator could not recover personal property of his intestate which had been disposed of by the intestate in fraud of his creditors, even though the estate be insolvent.   The rule laid down has been followed ever since, both with respect to real property and personal property, without any distinction being drawn as to the character of the property.   Hamilton v. Scull's Adm., 25 Mo. 166; George v. Williamson, 26 Mo. 190; Jackman v. Robertson, 64 Mo. 292; Hall v. Calahan, 66 Mo. 323;

Zoll v. Soper, 75 Mo. 462; Tyler v. Larimore, 19 Mo. App. 445; Rozelle v. Harmon, 29 Mo. App. 569; Hayes v. Fry, 110 Mo. App. 20, 83 S. W. 772. (2) The law is also well settled in this State that an administrator of a fraudulent grantor, who is also a judgment creditor of the fraudulent grantor, cannot maintain an action to set aside a fraudulent transfer by the deceased. Goldstein v., Winkelman, 28 Mo. App. 432. The same rule obtains as to the heir or devisee of the fraudulent grantor. Ober v. Howard, 11 Mo. 425; Thomas v. Thomas, 107 Mo. 459, 18 S. W. 27; Davidson v. Dockery, 179 Mo. 696, 78 S. W. 624.

*W. W. Henderson* and *Cocke & Trigg* for respondent.

(1) (a) An agent, having received from his principal goods or money for the avowed purpose of shielding same from the principal's creditors, will not be heard to set up the fraudulent nature of the transaction in order to defeat a recovery of same by the principal. So long as the illegal design has not been accomplished there remains to the principal a *locus poenitentiae.* Gowan's Admr. v. Gowan, 30 Mo. 472; Block v. Darling, 140 U. S. 234; Taylor v. Bowers, 1 Q. B. D. 291; Adams Express Co. v. Reno, 48 Mo. 264; Bowes v. Foster, 2 H. & N. (Court of Exchequer) 779. (b) Where a party, being in possession of personal property, admits that he is the custodian thereof for another, the relation of bailor and bailee is thereupon created — it not being essential that the formality of a redelivery of the *res* be gone through with. "In such case mere words are sufficient to pass the title." Allgear v. Walsh, 24 Mo. App. 144; Robinson v. Haas, 40 Cal. 474; Lide v. Lide's Admr., 32 Ala. 449; Beale on Bailments (1900), pp. 284 and 280; Hale on Bailments (1896), pp. 13-14. (2) The declarations of a party, while in possession of either realty or personalty, and made in disparagement of his

title, or in explanation of the character of his possession, have always been deemed admissible evidence tending to show in whom the real ownership and title rested. Meier v. Meier, 105 Mo. 411; Anderson v. McPike, 86 Mo. 293; Cavin v. Smith, 24 Mo. 221. It, therefore, follows that the admission of the appellant, made on the 9th day of February, 1903, to the effect that the money then in her possession was the property of plaintiff's intestate, created the relationship of bailor and bailee between the parties. But, independently of the transaction of February 9, 1903, the evidence being that it was never contemplated by the parties that title to the funds should vest in the appellant, it is unimportant to inquire as to whether the identity of the res was preserved, for, both in contemplation of law, and of the parties, plaintiff's intestate was the rightful owner of the funds. Clarke, Harrison & Co. v. Brown, 77 Ga. 606; Repplier v. Jacobs, 149 Pa. St. 167; Love v. Harvey, 114 Mass. 80; Morgan v. Groff, 4 Barb. (N. Y.) 524; Humphreys v. Magee, 13 Mo. 435; Block v. Darling, 140 U. S. 234. (3) Under the answer, which is in the form of a general denial, the appellant may not invoke, as a defense, the illegality of the transaction. McDearmott v. Sedgwick, 140 Mo. 181-183, 39 S. W. 776; McClure v. Ullman, 102 Mo. App. 697, 77 S. W. 325; Gibson v. Jenkins, 97 Mo. App. 27, 70 S. W. 1076.

BLAND, P. J.—Omitting caption, the petition is as follows:

"Plaintiff states that Ralph H. Pybus Knapp, deceased, late of the city of St. Louis, State of Missouri, departed this life on or about the twentieth day of January, 1904, leaving him surviving, as his widow, the plaintiff herein; that thereafter, to-wit, on the eighteenth day of April, 1904, the plaintiff was, by the probate court in and for the city and State aforesaid, duly appointed administratrix of the estate of the said Ralph H. Pybus Knapp, deceased; that, under which appointment, she

was duly qualified, and is now in charge of said estate as the administratrix thereof.

"Plaintiff states that in or about the month of May, 1902, the said Ralph H. Pybus Knapp, deceased, placed in the keeping, care and custody of the defendant a large sum of money, to-wit, the sum of five thousand dollars, with and under the understanding and agreement, then had and made, that said sum of money should be held and retained by the defendant for the said Ralph H. Pybus Knapp, and to be repaid and redelivered to the said Ralph H. Pybus Knapp, upon request; that the defendant, since said last-mentioned date, has continued to retain the possession and custody of said sum of money; that, though the payment of said sum of money has been demanded by the plaintiff, as such administratrix, defendant has wrongfully refused, and still refuses to pay the same, or any part thereof, to the plaintiff.

"Wherefore, plaintiff prays judgment for the sum of five thousand dollars, with interest, and the costs of this action."

The answer was a general denial.

The cause was submitted to the court, without the intervention of a jury, who, after hearing the evidence, found the issues for plaintiff and rendered judgment in her favor for twenty-one hundred and eighty dollars and interest thereon. After taking the usual preliminary steps, defendant appealed.

The history out of which the litigation grew, briefly stated, is as follows: In 1902, Ralph Knapp, as the elder son of his father, was, under the law of primogeniture, entitled to an estate, or interest in an estate in England of the value of about seven thousand dollars. He employed the law firm of Dodge & Mulvihill, of the city of St. Louis, to establish his right in the estate. His attorneys were successful and as soon as the matter was settled in his favor, he sailed for England and collected about seven thousand dollars of the estate. He pur-

118 App.—44

chased a draft in London for $5,811.43, payable to his mother, and sent it to her. She received the draft, cashed it and out of the proceeds handed or gave her daughter, the defendant herein, two thousand dollars, which the latter, on January 23, 1903, deposited to her individual credit with the Mississippi Valley Trust Company. Ralph Knapp spent the greater portion of the balance of his inheritance in seeing Europe and then returned to his home in St. Louis. On his return he refused to pay Dodge & Mulvihill their fee of eighteen hundred dollars. They brought suit against him to recover the fee and obtained a judgment for the amount claimed. The judgment was collected of Knapp's mother through garnishment proceedings.

It is practically conceded by defendant that Ralph Knapp placed the $5,811.43 in the hands of his mother for the fraudulent purpose of defeating Dodge & Mulvihill in the collection of the debt he owed them.

Defendant testified that she had kept a deposit account with the Mississippi Valley Trust Company for several years prior to 1903. The state of her account on May 16, 1903, was as follows:

| | | |
|---|---:|---:|
| Balance .................. $ | 94.77 | |
| January 23, 1903 .......... | 2,000.00 | |
| January 26, 1903 ........ | 30.00 | |
| February 4, 1903 ........ | 67.00 | |
| February 5, 1903 ................ | | $    7.00 |
| February 9, 1903 ................ | | 2,180.00 |
| May 16, 1903 .................... | | 4.77 |
| | $2,191.77 | $2,191.77 |

Defendant's evidence shows that her income from all sources was, and had been for several years, thirty-five dollars per month. She testified that after her brother returned from England, she gave him several checks on her bank account for the purpose of enabling him to pay his bills and at one time gave him a check

for one hundred dollars. On February 19, 1903, defendant, accompanied by Mrs. Mullins, a friend, went to the Mississippi Valley Trust Company and withdrew twenty-one hundred and eighty dollars in currency, which she placed in the bosom of her shirtwaist. Defendant and her friend then walked over to the William Barr Dry Goods Company where they met Ralph Knapp and Charles Ramlose, who had been waiting there for them for about half an hour. When the parties met, Ralph Knapp, addressing defendant, his sister, said: "Well, did you get my money, Sis?" Defendant answered, "Yes, Ralph, I have it here," pointing to the bosom of her shirtwaist. Defendant testified that after she withdrew the money from the trust company she took it home and kept it there. The evidence tends to show that defendant apprehended she might be garnisheed on process against her brother and withdrew the money from the trust company to defeat the garnishment; it also shows that on several occasions she stated that she was taking care of her brother's money for the purpose of avoiding the payment of what she said was "an unjust claim against him." On the death of Ralph Knapp, defendant made arrangements for his funeral and stated she had some four or five hundred dollars of his money with which she intended to pay the funeral expenses, but she never paid them. The evidence for the defendant tends to show that the money sent from England by Ralph Knapp to his mother was in part payment of a debt he owed her, and that out of this money she made defendant a present of two thousand dollars.

It is contended by defendant that the evidence tends to show two theories: one, that the money sent by Ralph Knapp to his mother was in payment of a debt he owed her; the other, that the money was transferred to her by Ralph for the purpose of defrauding his creditors; and it is strenuously contended there is no evidence that the money was deposited by Ralph Knapp with his

mother to be returned to him, and hence there is no proof of a bailment. If either theory of defendant is correct, then the judgment should be reversed, for if the money was sent from England to pay a debt, which Ralph owed his mother, of course, it cannot be recovered, nor can it be recovered by Ralph's administratrix if he conveyed it to his mother for the purpose of defrauding his creditors. [Brown's Admr. v. Finley, 18 Mo. 375; Hall v. Callahan, 66 Mo. l. c. 322; Zoll v. Soper, 75 Mo. l. c. 462; Jackman v. Robinson, 64 Mo. l. c. 292; Roan v. Winn, 93 Mo. 403, 4 S. W. 736; Thomas v. Thomas, 107 Mo. 459, 18 S. W. 27; Goldstein v. Winkleman, 28 Mo. App. 432.] There is no evidence showing or tending to show an arrangement or understanding that Ralph Knapp's mother should hold the London draft for him, or that she should cash it and hold the identical cash to be returned to him on demand; and defendant contends that for this reason (that the identical thing or property was not to be returned) it is conclusive there is no bailment in the case. The general rule is that there can be no bailment unless the identical thing bailed is to be returned to the bailor. [Coleman v. Lipscomb, 18 Mo. App. 443; Potter v. Mt. Vernon Roller Mill Co., 101 Mo. App. 581, 73 S. W. 1005; Trunick v. Smith, 63 Pa. St. l. c. 23.] Bailment in most instances is founded on contract, but not in every instance. As said in Hale on Bailments, p. 14, "Wherever possession of a thing is knowingly acquired, unaccompanied by the right of ownership, a bailment relation is established, and the person in possession holds the things acquired simply as bailee."

Schouler says: "The simple fact of knowingly holding possession of property which belongs to another will oblige the possessor, no matter how he came by it, to apply a certain care and diligence, and stand to a certain bailment accountability." [Schouler's Bailments and Carriers (3 Ed.), sec. 3.]

There is evidence in the record tending to show

that defendant knowingly came into possession of the two thousand dollars in money belonging to Ralph Knapp, unaccompanied with the right of ownership in herself; if so, then she became and was, as to such money, a bailee. But her counsel insists that as she deposited this money with the Mississippi Valley Trust Company to her personal credit, and as there was no understanding that the identical money she received from her mother should be returned to her brother, there was no bailment.

In Repplier v. Jacobs, 149 Pa. St. 167, the court, speaking in respect to the necessity of identifying money, at p. 169, said: "The argument that it was not the same money [the same argument made here] that plaintiff originally deposited but part of the winnings of the illegal transactions is of no weight. The cases where money is required to be earmarked, or where the law will inquire whether it is the identical coin or bank notes are exceptional. For all ordinary purposes in law as in the business of life, the same sum of money is the same money, whether it is represented by the identical coin or not."

This is sound reasoning and sound practical common sense to make use of in the ordinary purposes of the law and in business life. It his been repeatedly held in circumstances where the identical grain commingled with other grain is not to be returned to the depositor, but a like quantity of the same kind and quality is to be returned, are not sufficient to convert the transaction from a bailment into a contract of sale. [See authorities cited in Potter v. Mt. Vernon Roller Mill Co., supra, p. 584.] The same rule has been applied in replevin suits to recover specific personal property, as where the goods replevied are mixed with others, but are nevertheless of the same nature and value, as in the case of grain, though an actual separation cannot be made by identifying each particle, if a division of equal value can be made, it has been repeatedly held the plain-

tiff may seize his aliquot part. [Kaufman v. Schilling, 58 Mo. 218; Groff v. Belche, 62 Mo. 400; Huff v. Henry, 57 Mo. App. 341; Story on Bailments, sec. 40.] As demonstrated by the foregoing cases, the law is not so much concerned with technical rules and subtle reasoning to reach a correct conclusion as it is to adopt practicable and workable rules suitable to the ordinary business of life; and we do not think it was of any consequence that the defendant, after receiving the two thousand dollars from her mother, deposited it with the Mississippi Valley Trust Company to her individual credit, if the money came into her possession unaccompanied by the right of ownership and she knew it was her brother Ralph's money; nor is it of any significance that the money was not earmarked. The same sum of money she received is, for all practical purposes and in law, the same money. There is abundant evidence in the record in support of the finding of the learned circuit judge, that the defendant held the money as bailee, and for this reason this finding is conclusive here. But we think the judgment is excessive. There is not a ray of evidence that defendant ever received more than two thousand dollars of her brother's money. Out of this the plaintiff proved that defendant had returned to her brother at one time, one hundred dollars to pay on some mining stock he had bought. Defendant also testified that she gave him checks at other times to pay his bills. The evidence shows, too, that defendant had a balance of $94.77 to her credit on her account with the Mississippi Valley Trust Company when she deposited the two thousand dollars, and that she afterwards deposited ninety-seven dollars. There is no evidence that any part of either of these sums was the money of Ralph Knapp, therefore, the evidence shows that when defendant drew the twenty-one hundred and eighty dollars from the trust company, she drew out her individual money as well as the money she held as bailee, and placed the package of money, her own and her brother's, in the bosom of her

shirtwaist. The only possible theory on which the court could have found that she held the entire sum as bailee, is on the evidence that when asked by her brother at Barr's store, if she had his money, she answered, "Yes, I have it here," and pointed to the bosom of her shirtwaist. Her admission, in the circumstances, was not an admission that all the money she had in the bosom of her shirtwaist was her brother's money. At that time, according to plaintiff's own evidence, defendant could not have had over nineteen hundred dollars of her brother's money in her possession, and the judgment should have been for that sum with six per cent interest thereon from the date the suit was commenced, May 20, 1904. Wherefore it is considered by the court that the judgment be reversed and the cause remanded with directions to the circuit court to render judgment for plaintiff in the sum of nineteen hundred dollars with six per cent interest thereon from May 20, 1904. All concur.

ON MOTION FOR REHEARING AND TO TRANSFER TO SUPREME COURT.

NORTONI, J.—The learned counsel for appellant insists, seemingly with much earnestness, in their motion to transfer this case to the Supreme Court, that the adjudication herein is in conflict with Coleman v. Lipscomb, 18 Mo. App. 443, decided by the Kansas City Court of Appeals, wherein it was held the law is well settled that in order to constitute a bailment, the parties must have intended that there should be a return or delivery of the identical article bailed, and also as being in conflict with the decision of that court in Corn v. City of Cameron, 19 Mo. App. 583, wherein it is said that money deposited in bank becomes *eo instanti* the money of the bank and not that of the depositor and the relation of creditor and debtor arises thereby between the depositor and the bank. After having re-examined the

question, we are of opinion that the result in this case in no way conflicts with either of those adjudications.

1.   In respect to the proposition that to constitute a bailment, the parties must have intended that there should be a return or delivery of the identical thing; it is well settled in law and the nature of some transactions is such that the rule can only be sufficiently answered by returning other property of like value and kind.   As said by the Supreme Court of Pennsylvania, in Repplier v. Jacobs, 149 Pa. St. 167, and as said by Judge BLAND, in the opinion of the court in this case:   "For all ordinary purposes in law, as in the business of life, *the same sum of money is the same money,* whether it is represented by the identical coin or not."   This is certainly reasonable and we do not understand that it necessarily infringes upon the doctrine that a deposit in bank constitutes the bank the owner of the money; or, in other words, *ipso facto,* transfers the title of the money to the bank and creates the relation of debtor with respect to such bank in favor of the depositor, who is thereby constituted a creditor, for, in the very nature of things, when one in such circumstances has clearly indicated that no intention is present to create the relation of creditor and debtor, but, on the contrary, it is manifest that the parties intended to create the relation of bailor and bailee, we are unable to see why the court should not enforce such intention even though the bailee has employed in business or transferred the actual amount deposited to another and was thereby rendered unable to make restitution of the identical subject of bailment.   The question with which the court has to deal is the intention of the parties in creating the relation rather than the manual possession of the subject of bailment, and we know no reason why, when it is apparent that a bailment was intended by the parties, that the bailor shall be precluded of his rights herein because, forsooth, the identical thing is incapable of being returned to the owner because of no fault on his part.   We are persuaded that the authori-

ties holding that the same sum of money in bailment for the purpose of the law of bailment, is the same money when found to be in possession of the bailee under an arrangement whereby the parties intended such bailment, are sound. The same doctrine is announced with respect to grain in possession of the warehouseman where the parties intended a bailment, in the case of Potter v. Mt. Vernon Roller Mills Company, 101 Mo. App. 581, and it was held that different grain of like kind and value is, within the meaning of the law, the same or identical grain as that bailed. It is apparent from the authorities that the crucial question in these cases with which the courts are called upon to deal, and the principle which should properly influence the adjudication, is the intention with which the subject of bailment was placed in the possession of, or is held by, the alleged bailee. When the case is measured by the question of intention, as above indicated, we are of opinion that there can be no conflict between this ruling and the cases holding to the doctrine of debtor and creditor, arising out of the ordinary business of banking. The decisive question in this case is that the case was tried in the court below on the theory that the defendant had possession of the moneys of the plaintiff's intestate, as bailee. Now on the 19th day of February, at Barr's store, the plaintiff's intestate inquired of the defendant, in the presence of witnesses, speaking of the moneys withdrawn from the Mississippi Valley Trust Company, as follows: "Well did you get my money, Sis?" and she answered: "Yes, Ralph, I have it here," pointing to the bosom of her shirt-waist; thus recognizing and admitting that the moneys which she held were the property of the plaintiff's intestate. This and other circumstances in the record are sufficient evidence to support the finding of the learned trial judge that the parties intended a bailment and that the defendant had possession of the moneys, not as a debtor, but as bailee of the plaintiff's intestate.

2.   It is next insisted that the adjudication in this case is contrary to and in conflict with a number of decisions of our Supreme Court holding to the doctrine that one having transferred or conveyed his property in fraud of creditors, cannot afterwards invoke the power of the courts, either of law or equity, to set aside such transfer or conveyance and reinvest title thereto in himself, and that this doctrine applies with the same force as against the executors, administrators, heirs and devisees of such fraudulent grantors.   We are persuaded that the learned counsel have entirely overlooked the fundamental distinction with reference to cases where a fraudulent grantor has actually transferred or conveyed his property whereby title is divested from him, and those cases in which he is not so divested of title, as in that of bailment.   The distinction, as we understand it, and it is certainly borne out in all of the authorities, is that where a fraudulent grantor has actually transferred or conveyed property in fraud of his creditors, and actually divested himself of title thereto, the courts will not aid him or his representatives in an attempt to recover title thereto, for having thus fraudulently divested himself of the title, courts are prone to leave him where, by his own misconduct, he has placed himself.  ·  This rule obtains in both law and equity.   On the other hand, where the party, as in this case, is not a grantor at all and has done no act by which he has transferred title to the property from himself, the courts will and do permit him to recover the property, even though it were placed in bailment with the fraudulent intent to defeat the rights of creditors.   This doctrine is sustained upon the principle that by permitting the bailor to recover the property, in no sense is the court called upon to set aside the conveyance or adjudicate title out of the fraudulent grantee and into the fraudulent grantor, but is only called upon to reinstate the fraudulent bailor in whom the title is and has been during the entire period of bailment, in possession as well of the identical property bailed.

And in this case the same sum of money is, in the law, the same money. [Authorities supra.] Among the reasons assigned for the doctrine are that by such proceedings the contemplated fraud is disaffirmed and undone, and by reinstating the property to the party in whom the title rests and the real owner, the true facts are thereby made to appear as to its ownership. It is no longer concealed, but is uncovered and thereby rendered available to the claims of creditor as assets in the hands of the debtor and the law thus serves a wholesome purpose in lending its aid in disaffirmance and undoing of the original wrong intended. The doctrine last mentioned is amply supported by the adjudications of the Supreme Court of this State as well as the courts of first authority elsewhere. See Gowan's Admr. v. Gowan, 30 Mo. 472; Block v. Darlington, 140 U. S. 234; Taylor v. Bowers, 1 Q. B. D. 291; see also Bowes v. Foster, 2 H. & N. (Ex.) 779, in which the entire case proceeds upon and recognizes this principle.

As indicated, the theory upon which the courts sustain actions of this nature being that instead of the fraudulent party invoking the aid of the court to enforce a recovery upon the contract or arrangement, born in iniquity and made in fraud, he is, by this proceeding, rather seeking a disaffirmance of such arrangement, and the law aids the party who is receding from his original fraudulent purpose to become re-possessed of his property in those cases where the parties intended bailment and there has been no transfer of title. Now that is the case before the court here. There are facts in the record which constitute substantial evidence sustaining the finding of the trial court that in this instance the money was held by the defendant as bailee, the purpose being, no doubt, to defraud the creditors of the bailor, and the court found the transaction to have been a bailment rather than a transfer of title. Had the court found that title to the money was transferred to the defendant for the purpose of defrauding creditors of the

plaintiff's deceased, then most certainly the courts would lend no aid to the plaintiff in setting aside such fraudulent conveyance.

Now because of the great similarity of the reasons thus given to the reasoning of the case permitting the penitent party to recover what he has advanced under an illegal contract, which remains unexecuted, it is urged by learned counsel that the doctrine mentioned is identical with that pertaining to illegal contracts generally and therefore it is subject in its application, to the limitation of the *locus poenitentiae,* and in order for the bailor to avail himself of his right to recover from the bailee, the property which he has placed in bailment in fraud of creditors, he must disaffirm the fraud and move to that end, prior to its consummation by the creditors having been actually defrauded by reason of the bailment, and therefore the purpose to defraud the creditors, Dodge & Mulvihill, having been actually consummated so far as was possible, the bailor not having become penitent and receded from the fraud intended prior thereto, no right to recovery can now be predicated upon this principle inasmuch as he failed to avail himself of the right to recede from the fraud and recover within the period of a *locus poenitentiae,* properly speaking. And it is argued that the affirmance of the judgment in this case will establish the principle in Missouri that a fraudulent bailor may recover the subject of bailment from the bailee even after the fraudulent purpose of the bailment is accomplished. It is error to say that such affirmance in this case will establish this doctrine, for the doctrine has long since been settled with us by the Supreme Court in Gowan's Admr. v. Gowan, supra. Indeed, the principle, as applicable to illegal contracts generally, is subject to the limitation suggested and with this in mind, we have been quite diligent in attempting to ascertain if the proposition be true with respect to proceedings of this nature as well.

We have been unable to discover, however, that the

doctrine that the fraudulent bailor can recover from the bailee the property in bailment, is predicated entirely upon the same principle which influences cases of illegal contracts generally in the law. Now, it seems that the doctrine with respect to bailments is that although the bailment was made in fraud of creditors, yet the bailee is bound to return the goods held by him as bailee and is precluded by the very nature of the transaction from setting up the illegality thereof. At least that is the law in this State, as appears by a case in point decided by our Supreme Court, which is controlling authority so far as this court is concerned, and we understand it to be the law universally settled in America on the question. [See Gowan's Admr. v. Gowan, 30 Mo. 472; also Block v. Darlington, 140 U. S. 234; Allgear v. Walsh, 24 Mo. App. 134.]

In Gowan's Admr. v. Gowan, supra, the property in bailment, a slave, was transported by the owner from Tennessee to Missouri for the purpose of defrauding his creditors, twenty years prior to the institution of the litigation with respect thereto. The owner afterwards returned to Tennessee and there departed this life. The slave remained in the fraudulent bailment sixteen years in this State, when suit was instituted by the administrator of the bailor seeking to recover therefor, and it was held by the Supreme Court that the fraudulent bailee would not be permitted to plead the fraudulent bailment in defense of that action, twenty years having elapsed after the removal of the slave to this State in order to defraud creditors, although it does not appear in the opinion, the fair inference is, the fraud contemplated and intended twenty years before, had actually been accomplished. Although this identical phase of the question does not seem to have been noticed by the court in the opinion, the adjudication that the bailor can not set up the fraud in defense on the facts of that case, without noticing the limitation of the doctrine contended for by counsel here, is a complete answer to the argument ad-

vanced in this case and is conclusive on this court. See also Watson v. Harmon, 85 Mo. 443; and Charles v. McCune, 57 Mo. 166, where the principle is recognized without mentioning the limitation contended for. It is proper to say here that the Kansas City Court of Appeals, in Allgear v. Walsh, supra, while going into the subject very fully, wholly failed to notice the limitation upon the doctrine urged in this court.

In Block v. Darlington, supra, the Supreme Court of the United States squarely adjudicated the doctrine that the fraudulent bailor may recover from the bailee for property in bailment even though it was held by the bailee in fraud of creditors, and that august tribunal did not notice the limitation contended for by the learned counsel here. Nor did it, by any expression or by inference, limit the right of recovery during the period of a *locus poenitentiae* or prior to the consummated fraud. Nor did the other cases supra express or decide any such limitation, save the English case of Taylor v. Bowes, 1 Q. B. D. 291, in which, although the question was not necessary to decision, inasmuch as the court said the contemplated fraud had not been actually accomplished. It was said, however, in the opinion, that the right of the bailor to recover under such circumstances exists prior to the consummation of the fraudulent purpose of bailment; or, in other words, the court in that case seems to proceed upon the principle which applies to illegal contracts generally, that courts will only aid the bailor when he has become penitent and seeks to recede from his fraud prior to its consummation. From the adjudications in all of the cases, however, coming under our observation, except the English case mentioned, it is apparent that while the courts limit the doctrine with respect to illegal contracts, that the law will aid the penitent party in disaffirmance of a fraudulent contract prior to the actual consummation of the fraud by the execution of the contract, and rest it upon the principle that in so doing, it is encouraging and rewarding the pen-

itence of wrongdoers and at the same time undoing the contemplated fraud. Though the doctrine with respect to aiding a fraudulent bailor to recover property in bailment from the bailee is not precisely the same, no doubt it does rest, with respect to the plaintiff's right to recover, in part upon the same considerations. It seems, however, not to be identical therewith in this respect. The distinguishing feature of the doctrine pertaining to bailor and bailee predicates appropriately, upon the principle that the bailee cannot be heard to question the right or title of the bailor under whom he holds. Now, while the cases usually give as a reason for permitting a recovery in such cases under the theory of bailment, that by so doing they reinstate the property to the estate of the true owner, thus rendering it available to creditors and also aid in the undoing of a fraud, this is true insofar as the plaintiff's rights are concerned, but it seems to us that the principle, entirely sound with respect to precluding the defense of fraud by the bailee in such action, upon which the doctrine must predicate, is that the bailee, having accepted the bailment of the goods from the bailor, thereby impliedly admits title in the bailor and is precluded from thereafter questioning his right, asserting claims adverse, or denying the bailor's title thereto, analogous to the principle which precludes a tenant from questioning the right of or asserting title adverse to the landlord under whom he occupies, and we are quite confident that the authorities, when analyzed, will sustain this proposition. The doctrine thus stated, rested upon the principle last mentioned, is in no manner subject to the influence of the principle pertaining to illegal contracts with respect to the *locus poenitentiae* and the bailor can recover the property even after the fraud has been accomplished, for it is his property all of the time, and the bailee is precluded from denying his right. This is the law with respect to such bailments as we understand it.

3.   The principle contended for here and which pervades the entire law of illegal contracts is to the effect that if money be paid or property delivered on a contract which is illegal, as being contrary to public law, good morals or public policy, and such contract has been actually executed, then both parties are thereby rendered *in pari delicto* and neither of them can recover from the other money so paid or the property delivered, for in such case the wrong is consummated and the title to the money or property is vested under such unlawful contract, contaminated with fraud, and the general policy of both law and equity forbids the enlistment of the courts, either in aid of said contract, or in divesting the rights acquired or reinvesting the rights surrendered in its consummation.  This principle extends no further than this, however, for on the other hand, the same policy of the law which forbids the aid of the courts in furtherance of such contract or in divesting from one and investing in another, titles and rights which have already passed and vested by such illegally consummated contract, will, in furtherance of the undoing of the unlawful purpose, aid the parties by reinstating them to their former situation, while such contract remains executory at any time prior to the consummation of the contemplated wrongful purpose, and if the party, having paid the money or property in such unlawful purpose, so desires, prior to its consummation, and seeks to recede from his original evil intention, he may do so and the law will aid him to that end by permitting him to recover that with which he has parted.  This intermediate state between the inception of the original evil purpose and its actual consummation by the execution of such contract, is sometimes mentioned as a *locus poenitentiae* wherein the parties may become penitent with respect to the evil purpose contemplated and the rights of the parties, not having become absolutely fixed by the executed contract, and thereby contaminated with the real turpitude of the transaction intended, the power of the

courts may be invoked, not in aid of the contract, but in disaffirmance thereof in re-establishing the penitent party to his former estate. And therefore it is well settled that while courts will, in no case, lend their aid in an action which predicates upon the affirmance of an unlawful contract, it is a universal rule that they will, proceeding upon the theory that such contracts are void, prevent the defendant from retaining the benefit which he derives from the unlawful act, by reinstating the party seeking to recede from his action as in disaffirmance, and this doctrine is consonant with the spirit and policy of the law. [Adams Ex. Co. v. Reno, 48 Mo. 264; Skinner v. Henderson, 10 Mo. 201; Spring Co. v. Knowlton, 103 U. S. 49-58; Lawson on Contracts (2 Ed.), 69; 2 Parsons on Contracts (9 Ed.), 764; 1 Story on Contracts (5 Ed.), sec. 617; Chitty on Contracts (12 Ed.), pp. 104, 105, 672; 2 Greenleaf on Evidence (Lewis Ed.), sec. 111; 15 Amer. & Eng. Ency. Law (2 Ed.), 1007; Umphreys v. Magee, 13 Mo. 435.] This doctrine has no application to this case between bailor and bailee.

The following cases, cited by appellant as holding to a doctrine contrary to that announced in the opinion in this case, we regard as wholly inappropriate to the issue as found by the court.

Brown's Admr. v. Finley, 18 Mo. 375, involved the question of where the property had been transferred by gift from father to daughter in fraud of the father's creditors. The court very properly refused to aid the administrator of the father's estate in setting aside such fraudulent conveyance.

In George v. Williamson, 26 Mo. 190, the transaction involved a tranfer of lands by a father to his daughter in fraud of creditors, and the court refused to aid the administrator to set such transfer aside.

Jackman v. Robinson, 64 Mo. 289, decided no more than that the administrator cannot impeach the fraudulent conveyance of his intestate.

118 App.—45

Hall v. Callihan, 66 Mo. 316, holds that a conveyance in fraud of creditors cannot be impeached by the grantor or his administrator.

Ober v. Howard, 11 Mo. 425, decided that a father, for a fraudulent purpose having conveyed lands to trustees for the benefit of two of his children, after his death, his heirs cannot, in equity set such conveyance aside on the ground of such fraud.

Thomas v. Thomas, 107 Mo. 459, holds that the heir cannot impeach the acts of his ancestor in the disposition of his property on the ground of fraud.

Davidson v. Dockery, 179 Mo. 687, holds that the devisees of the grantor in a fraudulent conveyance cannot be heard to ask a court of equity to set aside a fraudulent deed of his grantor for the devisees take under the fraudulent grantor and their rights cannot be superior to those of the grantor.

Zoll v. Soper, 75 Mo. 460, announces the familiar doctrine supra, that an administrator cannot impeach the voluntary conveyance of his intestate for fraud as to creditors, although the estate may be insolvent.

Merry v. Fremon, 44 Mo. 518, holds that a conveyance by his intestate cannot be impeached by the administrator as being fraudulent on the part of the grantor.

McLaughlin v. McLaughlin, 16 Mo. 242, decided that a conveyance of an intestate cannot be impeached by his administrator or heirs of the grantor for fraud as to creditors, holding that none but the creditors themselves or those in privity with them can avoid it.

Crook v. Tull, 111 Mo. 283, holds that neither a grantor nor his administrator can assail the grantor's conveyance because made in fraud of creditors.

Hamilton v. Scull's Admr., 25 Mo. 165, holds that the deceased having given a note to the plaintiff in furtherance of an attempt on the part of the maker of the note to defraud his creditors, and afterwards died, such note having been filed as a demand against his estate, the administrator of the maker of the note will be permitted

to say that the note had its origin in the fraudulent purpose mentioned, and in event of such showing, the court will decline to enforce the note by allowing it as a demand against the estate.

The following cases decided by the courts of appeals and relied upon by appellant as being in conflict with the adjudication in this case are as follows:

Tyler v. Larimore, 19 Mo. App. 445, holds in an action founded on a fraudulent contract by one of the parties to the fraud, seeking to enforce its provisions against the other party, that the courts will close their doors against the complainant.

Hayes v. Fry, 110 Mo. App. 20, holds that neither the administrator nor the heirs can maintain an action to set aside a fraudulent conveyance of the intestate. Such action can only be maintained by creditors and those in privity with them.

Goldstein v. Einkelman, 28 Mo. App. 432, holds that the administrator of the deceased payee in a promissory note, although also a judgment creditor of the estate, cannot disaffirm his intestate's transfer as in fraud of creditors or recall to himself the title of the note.

It is apparent that each of the cases above referred to are adjudications resting upon an entirely different proposition than that before the court in this case, and each and all of them announce the well-settled rule that the courts will not aid the enforcement of a contract made in fraud, nor will they aid an attempt to set aside a conveyance made in fraud and reinvest the title in the fraudulent grantor or his representatives; whereas the question before the court is wholly unlike that proposition, inasmuch as here, the plaintiff does not invoke the aid of the law to set aside a conveyance nor to enforce a fraudulent contract. All that she prays is that the moneys which were placed in bailment by her deceased in order to defraud creditors may be reinstated to the estate of which she is administratrix, and in which title rightfully rests; that is, that the moneys be reinstated to

the rightful owner where the title, all of the time, has remained, for under the theory of the law of bailments, the title has ever rested in her deceased, the bailor, and upon his death, in the estate of which she is administratrix. So we see by this proceeding the court is aiding, not the fraud, but its undoing, and thus renders the moneys in fradulent bailment available to creditors, and the bailee will not be permitted to question the right of her bailor.

We are unable to see where the principles of the cases last above cited are at all pertinent here and the motion for rehearing and to transfer to the Supreme Court will be overruled.

All concur.