(33 App. Div. 83.)

## WIGGINS v. STEVENS.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. BANKS AND BANKING—DEPOSITS—PAYMENT—EVIDENCE.
  In an action against the receiver of a bank to establish an indebtedness to a depositor, the burden of showing payment of a conceded deposit is on the receiver.

2. SAME—WHAT CONSTITUTES PAYMENT.
  The assignee of an insolvent estate, who had a deposit as such in a bank of which he was cashier, drew a check, as assignee, for the amount of the deposit, and placed it on the spindle where paid checks were placed by the paying teller, and the check was entered in the bank's books. *Held,* that it did not constitute payment of the deposit, but the presumption of payment arising therefrom might be rebutted.

3. TRUSTS—FOLLOWING TRUST FUNDS—BANK DEPOSITS.
  A cestui que trust may follow trust funds into the assets of a bank, and reclaim them, as against the general creditors of the bank.

Appeal from special term, Oneida county.

Action by Howard C. Wiggins, as assignee of W. B. Cook for the benefit of his creditors, against Jim Stevens, as receiver of the Central National Bank of Rome. There was a judgment for defendant, and plaintiff appeals. Reversed.

The relief sought in this action was a judgment establishing the indebtedness of the defendant, as receiver, etc., for the sum of $4,732.16 deposited by John E. Bielby, an assignee of W. B. Cook, at the Central National Bank, and that a check of $4,600 drawn by said Bielby, as such assignee, while he was acting as cashier of said bank, which the complaint alleged was never in fact paid, be declared void and of no effect, and that the judgment decree such indebtedness against the defendant, and that he be directed to certify to the comptroller of the currency the amount of such indebtedness, and that the plaintiff be allowed to share in the dividends declared by the said bank. The defense was a general denial, and an allegation of payment of the amount of said check. Before the commencement of the action, Bielby had been removed as assignee, and the plaintiff, Howard Wiggins, appointed in his place.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Timothy Curtin, for appellant.
Thomas S. Jones, for respondent.

WARD, J. It is admitted in the pleadings, and conceded in the case, that the Central National Bank of Rome was a national banking association transacting its business at Rome, N. Y.; that for a number of years prior to the 1st day of December, 1893, and up to about the 19th day of December, 1894, John E. Bielby was the duly-appointed and acting cashier of the bank; that about December 1, 1893, William B. Cook, of Rome, made a general assignment for the benefit of his creditors to Bielby, as assignee; that Bielby accepted such trust, and received money under the said assignment, which he deposited in the said bank "to the credit of J. E. Bielby, as assignee of W. B. Cook"; that on the 24th day of September, 1894, there was deposited in the said bank to the credit of J. E. Bielby, assignee of W. B. Cook, a sum exceeding $4,603. The trial court held and decided that all of the said deposits had been paid to the

said Bielby, as assignee, by the bank, except the sum of $132.16, with interest, which amounted at the time of the entry of judgment to $155.04, for which the plaintiff obtained judgment. The burden of showing the payment of this deposit rested with the defendant, and the question to be determined upon this review is whether the conclusions of the trial court are fairly supported by the evidence. This is an equitable action, and this court will review the facts.

The Central National Bank of Rome became insolvent, and passed into the hands of a receiver, on the 2d day of January, 1895. Bielby, the cashier, had mismanaged the affairs of the bank, appropriated its funds, was tried and convicted, and sent to prison, from whence he was brought, as a witness, to testify in the action. There were a teller and a bookkeeper in the bank, under the control of the cashier. On the 24th and 25th of September, 1894, the teller was absent from the bank, and Bielby performed his duties. On the 24th, Bielby executed, and put upon the spindle in the bank where paid checks were placed, a check as follows:

"Rome, N. Y., Sept. 24, 1894.

"Central National Bank:

　"Pay to the order of C................................................$4,600

Forty-six hundred ............................................. dollars.

"J. E. Bielby, Assignee.
"W. B. Cook."

Bielby testified:

"I placed it [the check] over a spindle that is on the teller's desk of the bank. At the time I drew that check, I did not obtain any money. I did not ever receive any money from that check. I did not, after the 24th of September, 1894, receive any money from the account of the Cook estate."

Upon being asked for what purpose the check was drawn, he said it was—

"For the purpose of correcting the amount of cash carried by the teller in the vault as the reserve of the bank. The teller was counting the reserve in the vault of the bank a greater amount than the actual legal tender which was represented by the books, and that the bank examiner was expected at most any time; and to correct that statement, or that apparent fact, I drew this check, to reduce that amount by the amount of the check. Q. Reduced it in what way? A. The figures of the books,—to change the appearance of the books. This bank did not in fact part with anything upon the giving, or after the giving, of that check."

He testified also that when a check was in fact drawn by any person connected with the bank, payable to "C.," it was paid without indorsement; that on the 25th he entered in the teller's scratch book in the bank the figures "$3,500.00" and "$21,800.00," which indicated the reserve of legal tender in the bank; that under date of September 24, 1894, this book indicated a reserve of $26,400; that the $3,500 was for legal tender that he had received from a friendly bank in anticipation of the bank examiner's visit, making a reduction of the reserve the amount of the check, but adding to the reserve the legal tender received. The proper amount of reserve for the bank was about $25,000. Bielby further testified that there was carried in the reserve paper to the amount of $4,000 or $5,000 that was not legal tender, and that he was anxious that the bank examiner should not catch him carrying anything but legal tender in

the reserve. Two witnesses testified in the case beside Bielby. They were Palmer, the bookkeeper, and Gillett, the teller, of the bank. These witnesses did not contradict Bielby in essential particulars. Palmer testified that on September 25, 1894, he entered in a book in the bank in which entries of payments of checks were made the statement, "J. E. Bielby, as ass'g of Cook, $4,600;" that he had no recollection of seeing the check; the entry, however, was correct; and that he must have seen the check, and got it from the spindle at the teller's desk, but he knew nothing further of the transaction, or whether the check was actually paid. Gillett testified that he had counted the legal tender in the reserve but once, and that was when he assumed the duty of teller, three or four years prior to the giving of the check; that at that time cash items were carried in the reserve, being checks of Bielby, to the amount of about $4,500; and that these were gotten out of the reserve some time afterwards by Bielby, and before the bank examiner came. He does not assume to know what was carried in the reserve when the check was given, and to some extent he corroborates Bielby, by testifying that there was a quantity of paper carried in the bank as cash items, in an envelope, of some $8,000, which passed into the hands of the receiver, and concerning which the receiver gave no evidence upon the trial. The trial court, in addition to finding that Bielby, while acting as such cashier and paying teller, drew from the bank $4,600 by check, and that the same was charged against him as assignee of Cook, by his authority, on the books of the bank, also found that Bielby had never paid, as assignee, to the creditors of Cook, or otherwise, the said sum of $4,600.

The position of the learned counsel for the defendant is that the giving of the check, and its entry upon the bank books as a payment of the amount due the creditors of Cook under the general assignment, which the bank had received through the assignee, worked a payment to them, and therefore the creditors have no claim upon the assets of the bank, beyond the small amount allowed in the judgment appealed from. The giving of the check, and the entries in the bank books, do not constitute, in and of themselves, a payment. They may be, and usually are, evidences of a payment; but the question still remains whether a payment was actually made. As we have seen, the creditors in fact never received payment of the money due to them which was deposited in the bank; nor did the cashier's juggling with the books of the bank, for whatever purpose, —whether to deceive the bank examiner, or to hide his own defalcations,—amount to such payment. See Dykman v. Northbridge, 80 Hun, 258, 30 N. Y. Supp. 164. It is true that Bielby acted in the double capacity of trustee for the creditors of Cook, and as an executive and controlling officer of the bank; and it may be somewhat difficult to distinguish the exact responsibility which pertained to him in either capacity, under the circumstances. But, as the bank officer, his knowledge was the knowledge of the bank; his act in making the payment, or attempting to make it, was the act of the bank. Kirsch v. Tozier, 143 N. Y. 390, 38 N. E. 375; Phillips v. Bank, 140 N. Y. 556, 35 N. E. 982. The check was executed by him

as trustee.  He knew, and the bank had notice from the check itself, that the attempted payment by the check, if such payment were intended, was a payment of trust funds; and the cestui que trust may follow trust funds into the assets of the bank, and reclaim them, as against the general creditors of the bank.  Kirsch v. Tozier, supra; Le Marchant v. Moore, 150 N. Y. 209–218, 44 N. E. 770; Roca v. Byrne, 145 N. Y. 186, 39 N. E. 812; Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 84; Bank v. Peters, 123 N. Y. 272, 25 N. E. 319; Suarez v. De Montigny, 1 App. Div. 494, 37 N. Y. Supp. 503, affirmed 153 N. Y. 678, 48 N. E. 1107.  But the evidence does not disclose that Bielby did convert the assignee fund represented by the check to his own use, but it fairly appears that the check and the entries upon the books indicated the makeshift to avoid the vigilance of the bank examiner.

As we have seen, the burden of establishing a payment was upon the defendant, and the evidence does not satisfy us of such payment. The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.  All concur.