THE STATE v. PRESTON ROGERS, Appellant.—7 S. W. (2d) 250.

Division Two, May 25, 1928.

*S. E. Garner* for appellant.

262

*North T. Gentry*, Attorney-General, and *A. M. Meyer*, Special Assistant Attorney-General, for respondent.

WHITE, J.—Defendant was tried in the Circuit Court of the City of St. Louis on charge of embezzling, August 15, 1924, as bailee, $265, the property of Casey P. Adams. On trial by jury, June 29, 1926, he was found guilty and his punishment assessed at imprisonment in the penitentiary for two years. Judgment followed, from which he appealed.

The State introduced evidence to show that in August, 1924, he obtained from Alice B. Adams, wife of Casey Adams, the sum of $150, and later $200 from Casey P. Adams, to be taken by him and paid to one F. C. Blase, as earnest money in part payment of the purchase price of certain property owned by Blase.

The appellant, while admitting the receipt of the money, contends that it was not a bailment; that the circumstances show the relation of debtor and creditor between him and Adams. That makes it necessary to examine the evidence at some length.

I. The defendant Rogers was a sort of real estate dealer, although it was not shown that he had any office. He came to Allie B. Adams in August, 1924, to interest her in the purchase of real estate, and said to her: "If you are interested in any place . . . if you should find a place you like, you let me know. I can look after it for you and take care of it." She then mentioned a place in Lucas Avenue, St. Louis, a twenty-room house, which she wanted. The defendant found out about the property. Afterwards he informed her that the price of the place was fourteen thousand dollars, and if she would pay $150, that would be earnest money. She accordingly paid him $150, and took his receipt, as follows:

No. ———                                                     August 7, 1924
        Received of Mrs. Allie B. Adams, one hundred and fifty dollars for part payment on house No. 2924-26 Lucas to Avenue, City. $150.
                                                        Preston Rogers, Agent,
                                                        103 North Jefferson.

He came back a week later and said that when he closed the deal she would have to give $200 more. She put him off in order to consult with her husband, who later gave him the $200. He then said that a thousand dollars would have to be paid down on the place and he would take care of the rest of the thousand dollars over the $350 earnest money. The Adamses, September 23rd, moved into the place described in the receipt. Some time in October the owner, Mr. Blase, passed the place and found it occupied by the Adamses. He then for the first time learned of the situation.

Prior to that time the defendant Rogers had gone to Blase and told him he had a client who wanted to buy the property, inquired the price and terms, etc. Blase said he would pay Rogers a commission of $190 if the deal was closed. Rogers, after getting the money from the Adamses, told Blase that Adams had paid him only $75 as earnest money, but that he would advance another ten dollars. Accordingly he paid Blase $85, and took receipt beginning, "Received of Preston Rogers for Casey P. Adams and Allie Adams," and stating that it was for the purchase price of the property described. The total price was to be fourteen thousand dollars, one thousand dollars cash and the balance on terms stated in receipt. This receipt was signed by A. F. C. Blase, owner.

It contained a statement that the terms and conditions were accepted, and was signed:

"Casey P. Adams and Allie B. Adams, by Preston Rogers Agent.
"————————

    "Purchaser Agent."

It is not shown that either of the Adamses knew anything about the receipt.

After Blase discovered the Adamses in his house they came to his office to fix the matter up. He testified that Rogers had lied to him about the situation; he never knew that Rogers had collected any money from Adams except the $75 mentioned. He closed a separate deal with the Adamses and refused to pay Rogers any commission. According to that deal he gave the Adamses credit for the $85 paid him by Rogers, and took a mortgage on the house of the Adamses in Webster Groves for $915. The Adamses made no further payments and he foreclosed that mortgage.

On cross-examination Mrs. Adams said:

"Q. Now, you knew when you were dealing with Rogers that he was simply acting as an agent, didn't you? A. Yes. sir.

"Q. And you knew that you were putting up money as earnest money to buy a piece of property, didn't you? A. Yes sir.

"Q. And you knew that the money that was turned over to Rogers was not to come back to you, didn't you? A. Yes sir.

"Q. You didn't expect it back, did you? You didn't expect to get your money back, did you? A. No, I didn't expect to get it back. *I expected it to go on the place.*

"Q. There was nothing said at the time the money was turned over that you were to get it back in the event the deal did not go through, was there? A. *Oh, yes, Mr. Rogers said if the deal doesn't go through you will get your money back.*"

After the Adamses found out that only $85 had been paid to Blase, Rogers told them that he would take care of the matter and see that Blase got the balance of the money.

Among other things, Blase in his testimony said: "I learned that Adams had paid Rogers more than Rogers paid me, and at that time Rogers assured the Adamses that he would make it good."

Casey Adams, on the stand, was asked how he happened to give the $200 to Rogers and said, "Because he said he would need that to finish up the deal with the property owner so that I could go into possession of the property."

On August 13th, defendant gave the Adamses another receipt for the earnest money, "A part purchase money for a certain parcel of improved property," describing it and mentioning the terms of purchase. This was signed by Graaf Realty Company. Daniel Graaf testified that he was doing real estate business in St. Louis under the name and style of The Graaf Realty Company; that there was no other firm in St. Louis by that name, and that the signature to the contract mentioned was not his signature; that he had no knowledge of the property and received no money from the defendant on account of the transaction.

In his first conversation with Mrs. Adams, Rogers told her he would "look after it" for her, but the Adamses did not pay nor promise to pay him anything for any services he might render them. When he receipted for the $150 he signed as agent. That could mean only as an independent real estate broker. It precludes the notion that he was representing her in the transaction. At the same time she knew he had no authority to make a contract for the seller. The conferences at which Rogers agreed to make the money good, fix it up in some way, do not show that the relation of debtor and creditor existed between Adams and Rogers. The character of the transaction was determined by what was done and what was intended at the time the money was paid. Any subsequent understanding between the parties would not affect it. The Adamses evidently were ignorant, inexperienced persons, and the evidence shows they were trying to save themselves in any way from the loss which Rogers caused them.

Title to the money did not pass to Rogers, because Mrs. Adams "expected it to go on the place," and Rogers told her if the deal did not go through, "You will get your money back."

The definition of "bailment" by 6 Corpus Juris, page 1084, is as follows:

"A bailment may be defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."

The note to that text gives many definitions from various states. The fact that the money could be paid back in a different form would not alter the character of the transaction as a bailment. [6 C. J. 1086-1088; Knapp v. Knapp, 118 Mo. App. 685, l. c. 692; 6 C. J. 1095; State v. Betz, 207 Mo. 589.]

Appellant contends that Rogers was the agent of Blase, probably on the theory that Blase had told Rogers he would pay the latter a commission of $190, if the deal were closed. There is nothing in Blase's testimony, nor anything in any circumstance of the case, to show that he authorized Rogers to collect any of the purchase money for the property. He denied that he authorized Rogers to put the Adamses in possession of the property. Rogers was not the agent of Blase in any general sense and didn't previously have the property for sale. His only function, so far as Blase was concerned, was to bring the parties together so that they could consummate the deal.

Appellant quotes from Kelley's Criminal Law and Practice (3 Ed.) section 681, page 609, as follows: "A bailee is one who is entrusted with the possession of any article of personal property for a special purpose, and which is to be returned to the owner or bailor, or to be

delivered to some third person, when the object of the trust is accomplished,'' and quotes several other definitions.

There are many aspects in which a bailment may be viewed, and the definitions vary accordingly.

Blase knew nothing about the collection of the earnest money, at the time the $150 and the $200 were paid. Rogers did not presume to receipt for it for Blase as part of the purchase price. The receipt says he received the money *"for part payment on house number 2924-26 Lucas;"* not *as* part payment. Mrs. Adams did not at the time understand that it was a trade which Rogers was authorized to conclude for Blase. ·Rogers did not so understand it, because he came back for $200 more. His function was to take to Blase the earnest money which would bind the trade between the Adamses and Blase.

Appellant contends that if defendant was agent for Adams he could not embezzle the money as bailee. It was not clear that Rogers was agent for Adams in any sense, but if it were the conclusion contended for would not follow. Section 3327, Revised Statutes 1919, relates to the embezzlement by an agent or employee, of money which shall have come into his possession ''by virtue of his employment;'' money received, not as bailment, but in the performance of his duty as agent.

Section 3329 applies if ''any bailee or other person shall embezzle'' . . . Money might very well be entrusted to an agent in a manner to constitute bailment. Rogers was given the money for a specific purpose, with no discretion as to its use. It was to be delivered to Blase or returned. It did not come to him by virtue of any previous employment. It was a plain bailment as that term is defined.

Appellant cites the case of State v. Britt, 213 S. W. 425. There the defendant was charged with embezzling a shot gun. He borrowed it and didn't return it. The case was reversed on the ground that there was failure to show an intent to convert the shotgun to the defendant's use. The court in that case quotes approvingly in the case of State v. Cunningham, 154 Mo. 161, l. c. 179, this statement: ''In the case at bar the defendant after receiving the money, with specific directions as to its application, disobeyed his instructions, abandoned his place of business, kept the money and left the country.''.

The question of intent is not raised in this case; that the defendant actually converted the money to his own use is not denied. The act by which he obtained it was not larceny, because he obtained possession lawfully.

The defendant himself did not testify and he failed to introduce any evidence from Blase or any other person to show any authority to collect any part of the purchase money.

II. It is further claimed that the information is insufficient in that instead of charging the facts and showing bailment it assumes that Rogers was bailee.

The information does not assume anything. It simply charges that Rogers as bailee received the money and converted it to his own use. That is almost in the terms of the statute. A similar information has been held sufficient. [State v. Stevens, 281 Mo. 639, l. c. 644.] If the averments in the information were too general, so that the defendant was entitled to more specific description or statement of the facts constituting the bailment, it was for the defendant to take advantage of it, by motion or otherwise, in the trial court. That was not done. It was sufficient after verdict.

Only two points were made in the motion for new trial; the alleged insufficiency of the information, and the variance by failing to prove bailment. The title to the money could not have passed to Blase because Blase knew nothing about it, and hadn't authorized Rogers to collect for him. The title didn't pass to Rogers because he took it for the specific purpose, to deliver it to Blase. There is nothing in the evidence to indicate that Rogers thought the money belonged to him or that he thought it belonged to Blase. It was at all times the property of Casey P. Adams.

The judgment is affirmed. All concur.