In the Matter of JOHN J. McCARTHY, Infant.

Surrogate's Court, Kings County, December 23, 1930.

*McDermott & Turner* [*Charles J. McDermott* of counsel], for the petitioner.

*Carl J. Austrian* [*Warren C. Fielding* of counsel], for Joseph A. Broderick, Superintendent of Banks, respondent.

WINGATE, S. This proceeding was instituted by the petition of John R. McDonald, in his capacity as clerk of the Surrogate's Court of Kings county, praying for the issuance of an order directing Joseph A. Broderick, as Superintendent of Banks of the State of New York in charge of the affairs of the Bank of United States, to show cause why a certain fund of which the petitioner was appointed joint custodian by decree of this court should not be surrendered and paid over.

The salient facts which have been made to appear demonstrate that by a decree heretofore entered herein, a certain fund belonging to John J. McCarthy, an infant, was placed in the joint custody of the clerk of the Surrogate's Court and the general guardian of said infant, who were directed to deposit the same in the Kensington Bank "subject to the order of the Surrogate." The fund was so deposited and the money was so received and accepted by the depositary. Thereafter this institution was absorbed by and merged into the Bank of United States, and still later respondent assumed charge of the affairs of the latter bank pursuant to the provisions of section 57 of the Banking Law. *

By order of this court made and entered on December 20, 1930, the former decree was modified and Williamsburgh Savings Bank was named depositary of this fund and the former designation was revoked.

Due demand for a surrender of the fund was made, but it was refused in the absence of a special order of this court to that effect.

Although it has been made to appear that this fund is substantially the sole reliance of the infant, who is now in dire need of a portion thereof, this circumstance can be given no weight in the determination, if positive rules of law forbid the granting of the relief sought.

The Bank of United States is concededly a trust company, and section 188 of the Banking Law provides for the appointment of such an institution as guardian, trustee, administrator, depositary or in other fiduciary capacities, enacting expressly in subdivision 5: "All moneys brought into court by order or judgment of any court of record of this state, * * * may be deposited with any such corporation that has been designated a depositary by the comptroller of the state of New York, as provided by the code of civil procedure * * *."

Subdivision 8 of the same section reads as follows: " 8. Preference. If dissolved by the legislature or the court, or otherwise, or liquidated by the superintendent of banks or otherwise, the debts from such corporation as guardian, trustee, executor, adminis-

---

* See amendment by Laws of 1930, chaps. 664, 678.

trator, committee or depositary, shall be entitled to priority of payment from the assets of such corporation on an equality with any other priority given by this chapter."

The Superintendent of Banks concedes the applicability of these sections to the case at bar, but contends that the proper procedure to be followed in connection with this fund is outlined in sections 72*–78†, inclusive, of the Banking Law.

In brief, these sections provide for the mailing by the Superintendent of Banks of a notice to all creditors to prove their claims and its publication for three months. Provision is then made for the listing of the claims within ten days after the date for presentation. Within thirty days thereafter he must accept or reject the claims filed, and within thirty days thereafter give notice to such effect. Within six months thereafter a hearing may be had thereon in the Supreme Court, which may make directions respecting payment of dividends.

If this procedure is necessary in the instant case, it is apparent that this court has no jurisdiction and that no part of this fund which is presently needed for the support and maintenance of this infant can be made available for approximately a year or more, and in the interval, if he is to live, public charity is his only recourse. There is no intimation in the case that the entire fund will not ultimately become available.

The basic question for determination, therefore, is whether or not this court has jurisdiction of the matter.

In the solution of this problem, it seems unnecessary to go extensively into the question of the general jurisdiction of Surrogates' Courts which received somewhat more than passing attention in *Matter of Morris* (134 Misc. 374). The basic principle there deduced (p. 382) was " that the Surrogates' Courts now posesss entirely unlimited jurisdiction over any and every legal and equitable question which may ever arise in connection with decedents' estates and the relations of guardians and wards so far as it concerns any person actually or constructively before the court by reason of any right in, claim to, or obligation in connection with, a decedent's or ward's estate."

It might be held that this statement and the authorities on which it was based were determinative of the matter, but it is believed that in the case at bar the jurisdiction of the court is based on a still further ground. The fund in question is money deposited in court, in the broadest sense of the term. Not only was it so deposited in the first instance, but it has continuously

---

* See amendment by Laws of 1930, chap. 664.—[REP.

† See amendment by Laws of 1930, chap. 678.—[REP.

remained in the custody of the court by virtue of the express terms of the decree directing its joint holding with the clerk of this court.

Section 137 of the Civil Practice Act provides: " No money, security or other property which shall have been placed in the custody of the court shall be surrendered without the production of a properly certified copy of an order of the court in whose custody said money, security or other property shall have been placed, duly made and entered, directing such disposition * * *."

On the facts disclosed the logical conclusion would appear inescapable that not only has this court jurisdiction over this fund, but it is the sole court which has such jurisdiction, since the section quoted makes its order a prerequisite to any dealing with the fund.

Approaching, now, the merits of the controversy, it is unquestionable that deposits in banks may be of two varieties. The distinction between them, while authoritatively recognized in all jurisdictions, is stated with especial clarity by the Supreme Court of the State of Washington in *Carlson* v. *Kies* (75 Wash. 171, at p. 174): " A deposit in a bank is either general or special. Where a general deposit is made, it is either credited to the account of a depositor subject to his check or evidenced by a demand or time certificate. The title to the deposit in such cases passes to the bank and it becomes the debtor of the depositor. On the other hand, when a bank accepts a special deposit it becomes a trustee of the depositor and holds the money subject to the trust. The receipt itself affords strong, if not conclusive, evidence of a special deposit. * * * It follows, therefore, that the bank holds the money, not as a general debtor, but in a fiduciary capacity."

In the case of a special deposit, this is merely an application to banks of the familiar trust principle that " the *cestui que trust* may follow trust funds into the assets of the bank and reclaim them as against the general creditors of the bank." (*Wiggins* v. *Stevens*, 33 App. Div. 83, 88.) (See, also, *Van Alen* v. *American National Bank*, 52 N. Y. 1, 8; *Dows* v. *Kidder*, 84 id. 121, 130, 131, 132; *Roca* v. *Byrne*, 145 id. 182, 186; *Le Marchant* v. *Moore*, 150 id. 209, 218.)

As was said in *Corn Exchange Bank* v. *Blye* (101 N. Y. 303, at p. 306): " The receiver, by his appointment, acquires no right to property in the custody of the bank which the latter does not own, as against the real owner; and the section in question was plainly not intended to protect the receiver's custody as against such owner. It aims to protect the property of the bank in his hands, and not to give him arbitrary control of what the bank does not own."

The case of *People* v. *City Bank of Rochester* (96 N. Y. 32) is of particular interest in this connection. It presented an application to compel the receiver of the bank to pay certain notes out of checks given to and accepted by it for that purpose. The court says (at p. 36): "*First.* The transaction in question was not between the bank and Sartwell, Hough & Ford in their relation of debtor and creditor nor in their relation of bank and depositor. The object of the latter was to provide a fund for the payment of specific notes, and the engagement of the former was to apply that fund to such payment. Thus a trust was created, the violation of which constituted a fraud by which the bank could not profit, and to the benefit of which the receiver is not entitled."

At page 37: " Counsel for the appellant contends ' that there never was any fund set apart for a particular object, or any intention or purpose to set apart such a fund.' I do not regard this, if true, as of much importance, but the appeal papers do not permit us to accept such construction.

" The checks of the petitioners were money assets in the hands of the bank and were so treated by all parties; they were delivered to it with explicit directions to apply the proceeds on payment of the notes; those directions were assented to by the bank officer, and the checks collected from the general fund. From that moment the bank was bound to hold the money for and apply it to that purpose, and no other, or failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. It is estopped from saying that all this is matter of book-keeping. It assumed a duty, and the receiver as its representative is bound by it. Nor does this obligation at all depend, as the appellant seems to suppose, upon the question, when, where and to whom the notes were to be paid; whether presently or in the future is immaterial.

" The specific object for which the fund was created was the payment of the notes, and its character does not depend upon those incidental circumstances. The checks were impressed with a trust, and no change of them into any other shape could divest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before the conversion."

This determination was applied and followed in *Bergstresser* v. *Lodewick* (37 App. Div. 629), in which the court noted that in *People* v. *City Bank of Rochester* " the proceeds of the checks could not be, in any manner, otherwise traced than as the amount of the assets of the bank at the time of its failure were increased

by the amount of the checks," and applied the same principle in attaining its result.

The doctrine of these and other New York cases is clearly stated in *Carlson* v. *Kies* (75 Wash. 171, at p. 176): " The appellant suggests that the identical money was not traced into the hands of the receiver. That is true, but the old rule requiring an identification of the specific fund or its avails in the hands of a receiver has been relaxed in the later cases. The doctrine of the modern authorities and what we consider the sounder view is that the trust fund is recoverable where an equal amount n cash remained continuously in the bank until its suspension and passed to the receiver."

In *Massey* v. *Fisher* (62 Fed. 958) the following appears (at p. 959): " It is not important that the plaintiff's money bore no mark, and cannot be identified. It is sufficient to trace it into the bank's vaults, and find that a sum equal to it (and presumably representing it), cont nuous y remained there until the receiver took it." (See, also, *Peters* v. *Bain*, 133 U. S. 670, 693.)

A case which bears striking resemblance, in many aspects, to the case at bar is *Van Wagoner* v. *Buckley* (148 App. Div. 808), decided in th's department. There, a certain sum was paid into court on an interpleader and by order of the court deposited with Carnegie Trust Company " to abide the determ nation of this action, when the court would by appropriate judgment or order direct the further disposition of the sum so brought within its protection and control " (p. 810).

The court in affirming the order made at Special Term directing a summary payment of this deposit by the Superintendent of Banks, adopted the opinion of the court below, which read as follows (beg nning at p. 811): " The money so continued in the custody of the trust company was at all times subject to the order of this court in this action and never became the property of the trust company for any purpose and certainly not to mingle with its own funds or those of any other person; it was in form a special deposit.

" Special deposits, whether of money, bonds, stocks or other securities, must depend upon such conditions, usual or unusual, as may be imposed by the depositor and accepted by the depository, and the parties are to be governed thereby, since the person or corporation upon receiving such deposit must be held to have acquiesced in and accepted the same upon the conditions imposed.

" The depository here, the trust company, was not required to accept the deposit, or to continue in custody or possession thereof; it could have declined in the first instance to accept the deposit,

or have subsequently moved to be relieved from its relation as depository and bailee if it so desired. But it accepted the bailment, which was in fact a special deposit, upon the terms and conditions fairly to be inferred from the directions of the order that the fund be deposited with it, the court being in effect the bailor, since the money was brought into court by the action of the trust company, and the fund was to be held to the credit of the action and not to be withdrawn or in any wise disposed of without the further order of the court.

" A bailee acquires no title to the subject of a bailment, but has only the right to possession thereof, subject to the conditions imposed in the creation of the bailment, a possessory interest authorizing the defense of the right to such possession until the termination of such bailment.

" The fund so deposited with the trust company by direction of the aforesaid order never became its property and did not pass to the Superintendent of Banks when he took possession of the trust company, its assets and business, nor did he then acquire, as against the real owner thereof, any right to any property in the custody of the trust company which it did not own. (*Corn Exchange Bank of Chicago* v. *Blye*, 101 N. Y. 303, 306; *First National Bank of Montgomery* v. *Armstrong*, 59 Fed. Rep. 62.)

" The relation of debtor and creditor, of that of bank and depositor in the ordinary course of business, did not and does not now exist as between the parties to this action and the trust company so far as relates to said fund held pursuant to the directions of the order of interpleader, and no one will, I take it, even suggest the possibility of such a relation existing between the court directing such deposit and the depository because of the making of such order of interpleader, even though that order were made upon the consent of the parties hereto and said trust company, through their attorneys.

" Consequently, if the relation of debtor and creditor, or that of bank and depositor in the ordinary course of business, did not exist after the order of interpleader was entered, then in what relation to the real owner of said fund was the trust company in the possession of said fund, if not that of a bailee or trustee of a special deposit?

" There can, in my opinion, be but one answer: that the trust company held the fund in trust as bailee (*Bergstresser* v. *Lodewick*, 37 App. Div. 629), under a bailment created by the order of interpleader.

" The venue of this action is Kings county, and there is no merit in the objection of the Superintendent of Banks that this motion

should be made and heard in the judicial district in which the principal office of the trust company is or was.

" The fund in question was by order herein deposited to the credit of this action, and the motion was properly made in the action." (See, also, *Matter of Bank of Cuba*, 198 App. Div. 733, 736.)

The foregoing decisions are conclusive on the case at bar.

By the terms of the decree of this court, pursuant to which the fund in question came into the hands of the bank, it was deposited expressly " subject to the order of the Surrogate." The holding by the bank was, therefore, subject to the special condition of such subjection and constituted merely a bailment for the performance of which the Superintendent of Banks is bound to respond in this court.

The motion is, therefore, granted.

Proceed accordingly.