LEWIS KULA, APPELLANT, *v.* KARAT, INC., A NEVADA CORPORATION, RESPONDENT.

No. 7025

February 26, 1975 531 P.2d 1353

*Don L. Griffith* and *Stanley W. Pierce,* of Las Vegas, for Appellant.

*Jones, Jones, Close, Bilbray, Kaufman & Olsen,* of Las Vegas, for Respondent.

**OPINION**

By the Court, BATJER, J.:

The appellant and his companion, referred to in the record only as Goldfinger, were guests in the respondent's Stardust Hotel in Las Vegas, Nevada. Appellant availed himself of the hotel's service for the safekeeping of valuables and money and deposited $18,300 with a cashier in the casino. This deposit was made solely in appellant's name, he was given a receipt for the amount of the deposit and advised that he might withdraw funds from the cashier by signing for them, and that the money could be withdrawn only upon his signature.

During the next two days appellant and Goldfinger gambled in the respondent's casino. There was testimony that they gambled from the same funds and freely exchanged chips to make bets. During that period appellant made withdrawal as well as deposit transactions with the cashier.

On the evening of June 7, 1969, there was $18,000 on deposit with the cashier before Goldfinger lost $500, and was without funds to cover the loss. He asked Philip Ponto, respondent's shift boss, to telephone appellant for a guarantee of the loss. Ponto called appellant. The text of that telephone conversation is in dispute. Appellant testified that he authorized Ponto to give Goldfinger credit to the extent of $1,000, but no more. Ponto's testimony confirms the $1,000 authorization, and relates that he specifically asked appellant if Goldfinger could gamble against the entire safekeeping deposit, and received an affirmative response.

In any event, Goldfinger was permitted to gamble with chips procured by signing "markers" totaling $18,000. When Goldfinger stopped gambling the shift boss requested the safekeeping receipt which he needed to send to the cashier's cage with the "markers." It is alleged that Goldfinger agreed to go to the room and get it, but instead he disappeared.

That morning appellant went to the cashier's cage and made a demand for the $18,000. When informed of the actual credit extended to Goldfinger, he acknowledged the $1,000 authorization and demanded $17,000, which is the amount prayed for in his complaint.

The trial court properly found a bailment had been created by the deposit of the money with respondent. A bailment of money is as well recognized as the bailment of any other personal property. Knapp v. Knapp, 96 S.W. 295 (Mo.App. 1906); State v. Rogers, 7 S.W.2d 250 (Mo. 1928); In Re McCarthy's Funds, 248 N.Y.S. 335 (Sur.Ct. 1930); O'Keefe v. Equitable Trust Co., 103 F.2d 904 (3rd Cir. 1939).

Appellant and a witness for respondent both testified that the money could only be withdrawn upon appellant's signature. Appellant steadfastly maintained that the money in safekeeping belonged only to him. Respondent accepted deposits and authorized withdrawals from the safekeeping fund only upon appellant's initials. It recognized ownership in him and refused to allow Goldfinger credit against the fund until approval was obtained from appellant. This evidence of ownership in appellant is not overcome by the testimony from one witness for the respondent that "[H]e [Kula] said he only owned half of it," nor by the fact that appellant and Goldfinger had both made bets from money previously withdrawn from the deposit in safekeeping. Appellant's sharing of chips with Goldfinger is not sufficient to show joint ownership over a deposit of money held by the respondent under a bailment contract made only in appellant's name and subject to withdrawals only upon his signature.

Here the $18,000 was never delivered to Goldfinger but retained by respondent as its own upon the ground that appellant had orally authorized respondent, through its employees, to permit Goldfinger to gamble against the deposit.

Although the district court, in its oral decision, indicated a possible joint ownership of the money in safekeeping by appellant and Goldfinger, in its findings it simply concluded that respondent was the bailee of the money placed in safekeeping and that respondent was obligated to use ordinary and reasonable care in its handling. No further conclusion was reached. Nevertheless the district judge found in favor of respondent, and this appeal followed.

The respondent is estopped to claim that Goldfinger had any right, title or interest in the money on deposit and it would have been error for the trial court to find any. There is authority for the broad rule that as long as the relationship exists a

bailee may not, in any case, dispute or deny the title of the bailor, or his ultimate right to possession, either by claiming title in himself, or as a justification for his refusal to return the property, or by asserting title in a third person. Ross v. Leftwich, 377 P.2d 495 (Utah 1963); Triggs v. Zicovich, 257 P.2d 60 (Cal.App. 1953). See also 8 C.J.S. Bailments § 21 (1962).

Where a bailee, either for hire or gratuitously, is entrusted with care and custody of goods, it becomes his duty at the end of the bailment to return the goods or show that their loss occurred without negligence on his part. Failing in this, there arises a presumption that the goods have been converted by him, or lost as a result of his negligence, and he is accountable to the owner for them. Mills v. Continental Parking Corp., 86 Nev. 724, 475 P.2d 673 (1970); Alamo Airways, Inc. v. Benum, 78 Nev. 384, 374 P.2d 684 (1962). Cf. Traynor v. Carter, 87 Nev. 281, 485 P.2d 966 (1971); Donlan v. Clark, 23 Nev. 203, 45 P. 1 (1896).

It is difficult to discern from the record whether or not the trial court, in reaching its decision, relied upon the disputed evidence purporting to show an oral commitment by appellant to be financially responsible for the gambling losses of Goldfinger to the extent of the amount of money in safekeeping. However, if it did, such reliance was in error because NRS 111.220[1] renders void an agreement to answer for the debts of another which is not in writing.

Since the making of the alleged oral agreement by appellant to be responsible for the gambling debt of Goldfinger has been put into issue through denials in respondent's answer, to which no responsive pleading was required, appellant could avail himself of the benefit of NRS 111.220 without pleading the same.

---

[1]NRS 111.220, provides in part that: *"Agreements not in writing: When void:* In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof expressing the consideration, be in writing, and subscribed by the party charged therewith.

"2. Every special promise to answer for the debt, default or miscarriage of another."

See also: Harrah v. Specialty Shops, Inc., 67 Nev. 493, 221 P.2d 398 (1950).

NRCP 8(d); see Mahoney v. Lester, 168 P.2d 339 (Mont. 1946).

In Elliott v. Chrysler Motor Corp., 89 Nev. 402, 403, 514 P.2d 207 (1973), we said: "[A]ssuming the existence of such an oral agreement, [as alleged by plaintiff] the failure to comply with the statute of frauds would void it as to the defendant. . . ." Here the existence of an oral agreement to answer for the debt of another was alleged and proven by respondent and the failure to comply with NRS 111.220 renders it void as to the appellant.

Under the old English statute of frauds the agreement was still valid even when the statute declared it to be unenforceable. The statute went merely to the remedy, prescribing the rules of evidence and declaring that without certain evidence the agreement could not be enforced.[2] Under our statute, however, the agreement is void if the requisites for a valid agreement are missing. NRS 111.220. See Reedy v. Ebsen, 242 N.W. 592 (S.D. 1932); Syrup v. Pitcher, 73 N.W.2d 140 (N.D. 1955).

Although appellant is bound by the admission contained in his pleadings that $1,000 be retained by respondent (Williams v. Lamb, 77 Nev. 233, 361 P.2d 946 (1961)), he is entitled to recover the $17,000 which was converted.

This matter is reversed and remanded with instructions to enter a judgment in favor of appellant not inconsistent with this opinion.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.

---

[2]In 1677 Parliament enacted an Act for the Prevention of Fraud and Perjuries. Only part of the fourth section is important for contract purposes. This section reads in part as follows:

"Sec. 4. And be it further enacted by the authority aforesaid, That from and after the said four and twentieth day of June no action shall be brought . . . (2) or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person; . . ."