SHIRLEY BROUSSARD, Appellant, *v.* DONALD CARLYLE HILL, Jr., Respondent.

No. 14294

June 26, 1984                  682 P.2d 1376

[Rehearing denied June 20, 1985]

*Paul A. Richards,* Reno, for Appellant.

*Sala, McAuliffe, White & Long,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Melvin Broussard and appellant Shirley Broussard commenced this action on May 29, 1980, against Donald Carlyle Hill, Jr. and five other defendants.[1] Mrs. Broussard alleges in her first cause of action that Hill, as their escrow agent and attorney, is liable for breach of trust and conversion for wrongfully paying money out of an escrow fund which had been established for the purchase of an undivided one-half interest in the Fernley Nugget, Paul's Casino, and Paul's Casino, Inc. At the end of plaintiff's evidence the district court entered a directed verdict in favor of defendant, Donald Carlyle Hill, Jr., under NRCP 50(a). Mrs. Broussard contends that the controversy should properly have been resolved by the jury.

---

[1] All other defendants except Hill were dismissed out of the action prior to trial. Melvin Broussard died prior to this appeal.

In determining whether a directed verdict should be granted, the trial court must view the evidence and all inferences most favorable to the party against whom the motion is made. Neither the credibility of the witnesses nor the weight of the evidence is to be considered by the court. If there is conflicting evidence on a material issue, or if reasonable persons could draw different inferences from the facts, the question is one of fact for the jury and not one of law for the court. Bliss v. DePrang, 81 Nev. 599, 407 P.2d 726 (1965); Troop v. Young, 75 Nev. 434, 345 P.2d 226 (1959); Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65 (1915).[2]

A review of the record in a light most favorable to Mrs. Broussard indicates that there was sufficient evidence for a reasonable person to conclude that Hill breached his fiduciary duty as an escrow holder and attorney to Mrs. Broussard.

In 1978, Mr. and Mrs. Broussard contracted to purchase an undivided one-half interest in the Fernley Nugget, Paul's Casino, and Paul's Casino, Inc. At the time all three operations were owned by Paul Keathley and Norman Wroe. Although it was apparent that Wroe was selling his one-half interest, the Broussards elected to deal through Keathley.

On January 2, 1979, the Broussards and Keathley decided to complete their negotiations and reduce their understanding to writing. Keathley suggested that the Broussards accompany him to the offices of Hill, his attorney. The parties agreed on $271,000.00 as the purchase price. This was to be paid with $90,000.00 placed in escrow and a promissory note for the remainder of the purchase price, secured by the shares of stock in Paul's Casino, Inc. which the Broussards were to receive.

Hill memorialized the terms in a Standard Purchase Agreement and inserted the following two provisos:

> This sale is conditional upon Buyers securing the appropriate unrestricted gaming license and otherwise complying with all state and federal laws and regulations concerning gaming.[3]

---

[2] The trial court erroneously applied the test of Simblest v. Maynard, 427 F.2d 1 (1970) in determining the sufficiency of evidence. In light of this error we will review the court's findings of facts under the standard as enumerated in Bliss v. DePrang, above.

[3] The trial court found that this provision was a condition subsequent to the contract which would allow the Broussards to rescind the sales contract if the gaming license was denied. This conclusion was clearly erroneous. NGC Reg. 8.030 provides in part that:

> Purchase price shall be reduced by one-half of outstanding business debts at the time of closing. The business shall maintain its responsibility for all outstanding business debts at the time of closing.

The Broussards tendered a check of $10,000.00 over to Hill as partial consideration on the purchase price. This sum was left in trust with Hill.

On January 10, 1979, the Broussards were advised by Keathley that there were many business debts and certain judgments against the Fernley Nugget and Paul's Casino which had to be paid. It was then agreed by Keathley and Mr. and Mrs. Broussard that Hill should make disbursements of the money he held in his trust account to clear the debts from the business prior to the closing of escrow and the filing of the gaming license application. The agreement between the parties was memorialized on January 10, 1979 in the escrow instructions to Hill. The escrow agreement provided: "It is hereby agreed that you [Hill] or seller, PAUL R. KEATHLEY, may remove money from escrow from time to time as is deemed necessary to pay any outstanding business debts, including but not limited to, utilities, N.I.C., E.S.D., accountant's fees, attorney's fees."

Within two weeks following the signing of the offer and acceptance, Mrs. Broussard deposited a total of $90,000.00 with Hill to be held by him in escrow.

Mrs. Broussard testified that she and Keathley had agreed that the money placed into escrow which was not used to pay off existing business debts was to be used to bankroll Paul's Casino.[4] Until the gaming license was issued, the escrow was to remain open; and, aside from the payment of existing business debts, the $90,000.00 was to be held in escrow by Hill.

---

> [No] individual who is owner of any interest in a licensed gaming operation shall in any manner whatsoever transfer any interest therein to any person, firm or corporation not then an owner of an interest therein, *and no such transfer shall become effective for any purpose until the proposed transferee or transferees shall have made application for and obtained all licenses required by the Nevada Gaming Control Act and these regulations, or have been found to be individually qualified to be licensed, as appropriate.*

(Emphasis added.)

[4]NGC Reg. 3.050 states: "No license will be issued for use in any establishment until satisfactory evidence is presented that there is adequate financing available to pay all current obligations and, in addition, to provide adequate working capital to finance opening of the establishment." Mrs. Broussard testified that the Nevada Gaming Commission required $50,000.00 in order for Paul's Casino to operate three gaming tables under an unrestricted gaming license.

On January 10, 1979, the same day on which the escrow agreement was signed, at the direction of Keathley, Hill issued a check from the escrow account in the amount of $43,561.18 to Wroe. In exchange for the check Wroe delivered a deed of his undivided one-half interest in the properties to Keathley. A deed of trust was placed on the property to secure payment on Keathley's promissory note.

Mrs. Broussard testified that she was ignorant of the Keathley-Wroe transaction. Moreover, she stated that she first learned of the deed of trust executed by Keathley to Wroe when a notice of default was received by her in June of 1979. Upon receiving the notice, Mrs. Broussard contacted Hill, whereupon she was informed of additional disbursements from the escrow fund which exhaused the entire $90,000.00 placed on deposit. Mrs. Broussard testified that after realizing that there were no funds with which to bankroll the casino, she withdrew her gaming application.

Mrs. Broussard contends that the premature release of escrow funds was in violation of the escrow agreement and that exhausting the casino's "bankroll" precluded the possibility of obtaining an unrestricted gaming license. She now seeks to recover the monies deposited by her and her husband into escrow.

### Breach of Trust

In managing monies deposited in escrow, the escrow agent is required to conduct his affairs with scrupulous honesty, skill and diligence. Webster v. U.S. Life Title Co., 598 P.2d 108 (Ariz.Ct.App. 1979). The escrow agent must strictly comply with the terms of the escrow agreement and may not use the proceeds in any manner that is not authorized by contract or deposit. Colonial Savings and Loan Ass'n v. Redwood Empire Title Co., 46 Cal.Rptr. 16 (Ct.App. 1965).

In the case at hand, the trial court found that the check written by Hill to Wroe for $43,561.18 was a business debt and thereby authorized under the terms of the escrow agreement.

From the evidence it appears that the check was written by Hill at the instruction of Keathley. This extraordinary sum was apparently used by Keathley to acquire Wroe's one-half undivided interest in the two casinos and in turn place the interests into escrow for the Broussards.[5] As such, it is difficult to understand how such payment was authorized under the provisions

---

[5]Mrs. Broussard does not contest the acquisition of Wroe's interest by Keathley subsequent to entering into the contract and deposit of funds, only that the acquisition was made by funds which had been earmarked as the casino's bankroll.

of the escrow instructions. The payment represented an obligation of Keathley to purchase Wroe's share. It was not an "outstanding business debt" but a debt of Keathley's. Moreover, a simple reading of the escrow instructions indicates that only reasonable expenses for the continued operation of the casino were authorized. There is no indication that Hill was authorized to part with such a large share of the escrow fund. The premature release of funds for purposes other than the payment of existing business expenses could certainly be found to be a breach of Hill's fiduciary duty.

A question remains as to whether such expenditures could in any way have harmed Mrs. Broussard. In order for liability to result from a premature release of escrow funds, there must be a causal connection between the noncompliance and any resulting damage. Foley v. Carson, 76 Nev. 102, 349 P.2d 1056 (1960). It is Mrs. Broussard's contention that by wrongfully releasing the funds, the money which was to bankroll the casino was depleted, thus rendering it impossible to obtain a gaming license. Hill contends that since Mrs. Broussard withdrew her application for an unrestricted license she is precluded from asserting that the premature release of the escrow funds prevented the approval from the state gaming commission. In support of this contention, Hill cites Lear v. Bishop, 86 Nev. 709, 476 P.2d 18 (1970), for the principle that an individual who voluntarily prevents the occurrence of a condition established for his or her benefit is estopped from seeking relief from a contract on the grounds that the condition precedent to his obligation failed to occur. Although Hill's argument is based on valid legal principles, it is factually dependent on a finding that Mrs. Broussard had no legitimate right to rescind her end of the bargain. Whether Mrs. Broussard has sufficient grounds to believe that Keathley materially breached the contract with the help of Hill by exhausting the escrow funds involves questions of fact for the jury. It would not be fair to allow Hill to distribute the escrow proceeds in violation of his trust and then assert that he may do so with impunity merely because Mrs. Broussard withdrew her application. Mrs. Broussard testified that such withdrawal was in contemplation of the inevitable—that no license would ever be granted without sufficient funds to bankroll the casino. The determination of whether that decision was reasonable depends on matters which should properly be determined by the finder of fact.

Since reasonable men could differ as to whether Hill breached his duty as an escrow agent to the detriment of Mrs.

Broussard, the trial court's granting of a directed verdict pursuant to NRCP 50(a) was improper and is reversed. The matter is remanded to the trial court.

In respect to the other allegations of error complained of by the appellant, after closely examining the record, we find them to be without merit.

Affirmed in part, reversed in part; costs are awarded to appellant.