OPINION
By the Court,
Rose, C. J.:

SUMMARY

This case concerns the scope of an escrow agent’s duty in a real property transaction involving a “double escrow.” Specifically, we are presented with the issue of whether an escrow agent has a duty beyond that set forth in the escrow instructions to apprise a party to the escrow, and an alleged principal who is not a party to the escrow, of suspicious facts surrounding a “double escrow” transaction.
After a pretrial hearing, the district court granted summary judgment in this negligence and breach of fiduciary duty action, finding in part that an escrow agent had no duty to disclose such facts as a matter of law. Appellant, who was allegedly defrauded in several real property transactions, filed this timely appeal contending that summary judgment was improper.

FACTS

In early 1995, Mark Snop and Mark Raiter, real estate investors, were introduced to Sam Ventura, an individual described as a successful real estate developer in Las Vegas, Nevada. Snop and Raiter later telephoned Ventura concerning real estate development in the Las Vegas market. After this initial telephone conversation, Ventura sent Snop and Raiter a letter soliciting their investment. Ventura also provided Snop and Raiter with a 1994 appraisal of a forty-acre parcel located in North Las Vegas that was available for acquisition and development.
Thereafter, Snop and Raiter informed Ventura that they would be willing to consider a joint venture in which Snop, Raiter, and Ventura would each contribute cash to develop the forty-acre parcel. Ventura, his associate Michael Bash, Snop, and Raiter agreed *1160 that Snop and Raiter would form a corporation, Mark Properties, Inc., that would provide sixty percent of the cash required for the forty-acre parcel, and Ventura and Bash, through Terra Vegas Corporation, an entity they controlled, would provide the other forty percent. It was agreed further that despite the fact that Terra Vegas would only contribute forty percent of the down payment, Terra Vegas would receive a full fifty percent ownership interest in the parcel in return for locating the property and representing the partnership in Las Vegas.
In June 1995, Terra Vegas sent Mark Properties a proposed joint venture agreement, escrow instructions, and an installment note for the forty-acre parcel. Thereafter, Mark Properties and Terra Vegas executed the joint venture agreement, which essentially gave Mark Properties and Terra Vegas each a fifty-percent ownership share in Ann-Allen, LLC, a limited liability company that took title to the forty-acre parcel.
The purchase price of the parcel was $2,400,000.00, with the parties providing $1,475,000.00 in cash and a note from Ann-Allen for the remaining $925,000.00. In order to close escrow, Mark Properties was to deposit $885,000.00 in cash and Terra Vegas was to deposit $590,000.00. Mark Properties gave its cash deposit to the escrow handler, National Title Company.
On the day escrow was to close, however, Snop and Raiter allegedly discovered that the seller of the forty-acre parcel was not an unrelated third party, as represented by Ventura and Bash, but instead was Rowe Land, a corporation controlled by Bash, Ventura’s associate. When Snop and Raiter confronted Ventura and Bash about Rowe Land being the seller, Ventura explained that Rowe Land had purchased the parcel from the original seller merely to facilitate its acquisition by Ann-Alien, and that Rowe Land had purchased the land for the same price as Ann-Allen was paying. In reliance on this information, Mark Properties concluded the transaction by tendering its cash contribution of $885,000.00 toward the $2,400,000.00 purchase price.
At her deposition, Nancy Wilder, a National Title escrow agent, testified that, at the escrow closing, she had told Snop, Raiter, and their counsel that the land was being sold through a “double escrow” and that there was a price difference between the two escrows that would pour over into Rowe Land’s first escrow with Old Republic Title.
Despite Wilder’s affidavit, Mark Properties insisted in its complaint that it never knew that Bash, a fiduciary of Ann-Alien, was profiting from the sale of the land to Ann-Alien. Rather, Mark Properties alleged that by establishing a double escrow, Rowe Land would purchase the parcel for a lower price, and then use the down payment tendered by Mark Properties for the Ann-Allen *1161 sale to satisfy Rowe Land’s down payment obligation in the first sale. As a result of this double escrow, Mark Properties alleged that Terra Vegas fraudulently profited and that Bash thereby violated his fiduciary duty as manager of Ann-Alien.
Mark Properties further contends that National Title breached its fiduciary duty to Mark Properties by failing to apprise it that Bash was profiting from the double escrow scheme. Before Snop and Raiter discovered this alleged fraud, the parties entered into several other disputed real property transactions.
First, on September 27, 1995, Ann-Allen bought a twenty-acre parcel for $700,000.00, which was attached to the forty-acre parcel that Ann-Alien had previously purchased. An escrow account was opened at National Title. This transaction required a down payment of $400,000.00 — $240,000.00 in cash from Mark Properties and $160,000.00 in cash from Terra Vegas. As in the aforementioned land transaction, Mark Properties and Terra Vegas each had a fifty-percent ownership share in the twenty-acre parcel, and title was held by Ann-Alien. Also, as with the previous transaction, Ventura and Bash had arranged a double escrow, as Rowe Land had contemporaneously entered into an escrow at Old Republic Title to purchase the property for a lower price. Further, consistent with the earlier transaction, Snop and Raiter contend that they were unaware that Rowe Land had purchased this land for a" lower price, as they were told by Bash that Rowe Land only purchased the land to facilitate the sale to Ann-Alien.
Next, in early 1996, Mark Properties and Bash agreed to form a joint venture called Moscow Strip Development Corporation for the purpose of buying the Sunbird Inn Motel. Bash told Mark Properties that the sale price of the Sunbird Inn was $4,000,000.00 and that a deposit of $75,000.00 was required to open the escrow, of which Mark Properties was to contribute $50,000.00 and of which Bash was to contribute $25,000.00.
As with the two aforementioned transactions, Bash’s company, Rowe Land, had contemporaneously entered into a transaction to purchase the Sunbird Inn for a lower price from a third party named Chapman.
Sandra Bianco of Lawyers’ Title was the escrow agent handling the Rowe Land/Chapman transaction. According to Bianco’s deposition testimony, Rowe Land deposited $50,0000.00 into escrow. The Rowe Land/Chapman/Sunbird Inn transaction fell through, however, because Bash failed to obtain the proper licenses. Thereafter, Mark Properties discovered that Bash was profiting from the double escrows.
Prior to Bianco’s refund of the Sunbird Inn deposit, Raiter met with Bianco. Raiter told Bianco that the true principal to the Sunbird Inn transaction was Mark Properties, and requested that *1162 Bianco hold the money on deposit pending a court action for fraud. Despite this request, Bianco refunded $38,000.00 of these funds to Rowe Land and $12,000.00 of these funds to Chapman.
Thereafter, Mark Properties filed a complaint against Lawyers’ Title and National Title alleging negligence and breach of fiduciary duty. In response to Mark Properties’ complaint, National Title filed a motion for summary judgment arguing that it had no duty to disclose or investigate fraud as a matter of law. Lawyers’ Title also filed a motion for summary judgment, arguing that it owed no duty to Mark Properties with respect to the Rowe Land/Chapman escrow because Mark Properties was not a party to the escrow. The district court granted both motions for summary judgment, ruling that the escrow companies owed no duty to Mark Properties as a matter of law. Thereafter, Mark Properties filed this timely notice of appeal.

DISCUSSION

Summary judgment is appropriate in matters where no genuine issues of material fact or law exist. See Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). In determining whether summary judgment is warranted, the nonmoving party is entitled to have evidence viewed and all reasonable inferences read in a light most favorable to the nonmoving party. See id.; Ferreira v. P.C.H. Inc., 105 Nev. 305, 306, 774 P.2d 1041, 1042 (1989).
In the instant matter, Mark Properties contends that the district court erred in granting summary judgment in favor of National Title and Lawyers’ Title. Specifically, Mark Properties contends that the district court erred in concluding that neither National Title nor Lawyers’ Title had a legal duty to disclose circumstances of impending fraud of which it was aware.
We agree with Mark Properties that an escrow agent has a limited duty to disclose facts concerning actual fraud of which the agent is actually aware. Although we conclude that the escrow agent has such a duty, we hold that an escrow agent has no duty to investigate circumstances surrounding a particular sale in order to discover fraud.
Generally, the escrow instructions control the parties’ rights and define the escrow agent’s duties. See Broussard v. Hill, 100 Nev. 325, 682 P.2d 1376 (1984). Other jurisdictions have, however, recognized an exception to this general rule, holding that an escrow agent has a duty to disclose known fraud to the parties with whom it has an escrow relationship. See Burkons v. Ticor *1163 Title Ins. Co. of California, 813 P.2d 710, 716-18 (Ariz. 1991); American State Bank v. Adkins, 458 N.W.2d 807, 810 (S.D. 1990). The Burkons court explained the rationale for implying a duty to disclose:
[An escrow agent may not] close its eyes in the face of known facts and console itself with the thought that no one has yet confessed fraud. Although not required to investigate, when the agent is aware of facts and circumstances that a reasonable escrow agent would perceive “as evidence of fraud,” then there is a duty to disclose.
Burkons, 813 P.2d at 718. The Burkons rationale persuades us. We cannot condone an escrow agent’s silence when the agent is aware of facts indicating that fraud is being perpetrated on a party with whom the agent has an escrow relationship.[1]
Having concluded that an escrow agent has a limited duty to disclose, we must reverse the district court’s grant of summary judgment on Mark Properties’ actions against National Title. There is a triable, albeit highly contested, issue of material fact concerning whether Wilder breached her duty to disclose to Mark Properties fraudulent circumstances of which she was aware. Wilder insists that she informed Mark Properties that the land was being sold through a “double escrow” and that the Rowe Land entity was profiting from the first escrow. Mark Properties, however, denies receiving any such information. We leave the resolution of this factual dispute to the trier of fact.
With respect to Mark Properties’ causes of action against Lawyers’ Title, we affirm the district court’s order granting summary judgment in favor of Lawyers’ Title.
*1164 An escrow agent owes a duty to disclose known fraud only to parties to the escrow transaction. See Berry v. McLeod, 604 P.2d 610, 611 (Ariz. 1979). In the case at hand, it is undisputed that Mark Properties was not a party to the escrow agreement. Although Mark Properties asks this court to conclude that Lawyers’ Title should have held the Rowe Land/Chapman funds pending a court resolution of Mark Properties’ action for fraud because it was a principal to this transaction, there is neither compelling rationale nor any authority for such a conclusion. In fact, if Lawyers’ Title were to refuse to release funds upon a third party’s request and in violation of the escrow instructions, it would likely be liable to the parties to the escrow for breach of fiduciary duty and conversion. See Broussard v. Hill, 100 Nev. 325, 329, 682 P.2d 1376, 1378 (1984) (“The escrow agent must strictly comply with the terms of the escrow agreement and may not use the proceeds in any manner that is not authorized by contract or deposit.”); see also Kula v. Karat, Inc., 91 Nev. 100, 103-04, 531 P.2d 1353, 1355 (1975) (“There is authority for the broad rule that as long as the [bailor-bailee] relationship exists a bailee may not, in any case, dispute or deny the title of the bailor, or his ultimate right to possession ... by asserting title in a third person.”).
Accordingly, we conclude that Lawyers’ Title owed no duty to Mark Properties because Mark Properties was never a party to a Lawyers’ Title’s escrow. The district court’s order granting summary judgment to Lawyers’ Title is affirmed.

CONCLUSION

We conclude that the district court erred in granting National Title’s motion for summary judgment for breach of fiduciary duty and negligence because there was a triable issue of material fact concerning whether National Title breached a duty owed to Mark Properties to disclose fraud or suspicious circumstances of which it was aware. We also conclude that, as a matter of law, Lawyers’ Title owed Mark Properties no duty because Mark Properties was not a party to the Lawyers’ Title escrow transaction, and thus the district court did not err in granting Lawyers’ Title’s motion for summary judgment. Accordingly, we affirm the district court’s order granting summary judgment to Lawyers’ Title, reverse the district court’s order granting summary judgment to National Title, and remand for further proceedings consistent with this opinion.
Young and Maupin, JL, concur.

 In so concluding, we are aware that there are other jurisdictions, such as California, which hold that an escrow agent has no duty beyond that set forth in the escrow instructions. See Lee v. Title Ins. Co., 70 Cal. Rptr. 378 (Ct. App. 1968); Blackburn v. McCoy, 37 P.2d 153 (Cal. Ct. App. 1934). California refuses to extend an escrow agent’s duty beyond the escrow instructions based on its conclusion that an escrow agent has only a limited agency relationship with the parties to the escrow that is set forth in the escrow instructions. See Lee, 70 Cal. Rptr. at 380; see also Blackburn, 37 P.2d at 155 (holding that escrow relationship cannot be one of general agency because the parties to a real property transaction have conflicting interests).
The rationale behind California’s refusal to imply a duty to disclose is protective in nature, as California concludes that imposing a duty to disclose would subject the escrow holder to a high risk of litigation that would effectively discourage a reasonable person from acting as an escrow holder. See Lee, 70 Cal. Rptr. at 380. We disagree.